[Civ. No. 36949. First Dist., Div. Four. June 2, 1976.]

J. D. PATTERSON, Plaintiff and Respondent, v.
CENTRAL COAST REGIONAL COMMISSION et al.,
Defendants and Appellants.

834

**836**

### COUNSEL

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Roderick Walston and William M. Chamberlain, Deputy Attorneys General, for Defendants and Appellants.

Noland, Hamerly, Etienne & Hoss, Myron E. Etienne, Jr., and James D. Schwefel, Jr., for Plaintiff and Respondent.

### OPINION

**CALDECOTT, P. J.**—Central Coast Regional Coastal Zone Conservation Commission (hereinafter regional commission) and the California Coastal Zone Conservation Commission (state commission) appeal from

a judgment of the superior court granting respondent Patterson a peremptory writ of mandate ordering appellants to issue a coastal permit to Patterson for four single family dwellings.

The facts are not in dispute.

Respondent is owner and developer of certain real property in the City of Carmel-By-The-Sea (hereinafter "city"). The property is immediately adjacent to a public beach owned by the city. Respondent purchased the property in 1965. Prior to 1971, four houses had been constructed on the property; in that year, respondent received final approval from the city planning commission to create a nine-lot subdivision thereon. Four of the nine lots corresponded to the existing structures; the remaining five lots were vacant.

During 1971, 1972 and part of 1973, respondent proceeded with grading of the five lots and installing underground utilities and driveways. Prior to the effective date of the California Coastal Zone Conservation Act of 1972 (Pub. Resources Code, §§ 27000-27650; hereinafter "Act") some of these improvements were completed and the others were in the process of construction, including one home on one of the five remaining lots.

In March of 1973, respondent applied to the regional commission for an exemption for the subdivision. The respondent's application treated the subdivision as a single, interdependent development. On April 23, 1973, the commission approved the exemption, describing the development for which the exemption was granted as "completion of lot improvements on 9 lot subdivision . . . and completion of a single family residence on Lot 1 in said subdivision." The commission found that respondent had obtained a vested right as to that described development, and was entitled to complete the project without securing a permit from the commission.[1]

Respondent did not appeal the exemption decision. Instead, on June 18, 1973, he filed an application for a permit to construct four

---

[1]Although the regional commission minutes state that "[t]he motion specified that the four houses still to be constructed were not exempt," the resolution itself does not refer to the four houses. The trial court found that the "order did not by its terms exempt construction of single family residences on the four lots . . . ." Respondent's notice of appeal to the state commission after denial of his later permit application, however, states that "the motion specified that the four lots on which homes were still to be built were not exempt from the Act."

single-family dwellings on the remaining four lots in the subdivision. The application stated, inter alia, that the proposed project (the four single-family dwellings) conformed to local plans and zoning, but that building permits had not yet been applied for although the subdivision had been approved and a permit had been granted for construction of the exempted house on Lot 1.

On January 21, 1974, the regional commission hearing was held on the permit application. The regional commission determined that, pursuant to Public Resources Code sections 27400 and 27401, subdivision (b),[2] approval of the permit application would require a two-thirds vote of the total authorized membership of 16. The commission then voted on the permit application with the understanding that permit denial would also constitute adoption of the findings of the commission staff's executive director. Nine commissioners voted for approval, and three for denial; as two-thirds of the total authorized membership was eleven, the permit was denied.

The resolution denying the permit states, in accordance with the executive director's recommendations, that the commission finds that the development will have "substantial adverse environmental and ecological effect," and that it is not consistent with the findings, declarations and objectives set forth in Public Resources Code sections 27001 and 27302 in that: "1) Construction on a sandy beach-dune area adjacent to a public beach prior to adoption of a coastal recreation and open space plan is premature, 2) Public acquisition of this parcel has been contemplated, and, at present, has been rejected for lack of funds on the basis of an appraisal which is based on 4 buildable lots. With the designation as a priority acquisition, funds are likely to be mobilized from other public agencies or private parties. The decision whether or not to acquire these and similar parcels for public use is a mandatory element of the forthcoming Coastal Zone Conservation Plan."

On February 1, 1974, respondent appealed the permit denial to the state commission, pursuant to section 27423. At a hearing the state

---

[2] All statutory references are to the Public Resources Code unless otherwise noted.

Section 27400 provides in relevant part: "Except as provided in Sections 27401 and 27422, no permit shall be issued without the affirmative vote of a majority of the total authorized membership of the regional commission, or of the commission on appeal."

Section 27401 provides in relevant part: "No permit shall be issued for any of the following without the affirmative vote of two-thirds of the total authorized membership of the regional commission, or of the commission on appeal: . . . (b) Any development which would reduce the size of any beach or other area usable for public recreation."

commission voted eight to one that no substantial issue was presented and it therefore declined to hear the appeal.

Having exhausted his administrative remedy, respondent petitioned the superior court for a writ of mandamus. The trial court, in granting the writ and ordering the appellants to issue the permit found that: (1) the regional commission's determination that the development would reduce the size of a beach or other area usable for public recreation was not supported by substantial evidence in light of the whole record; (2) a *majority* of the total authorized membership of the regional commission made all of the findings required by Public Resources Code section 27402,[3] and in any event any contrary finding could not be supported by substantial evidence in light of the whole record. A majority of the commission thereupon voted to grant the permit; (3) even if a two-thirds vote were required, the denial was not supported by substantial evidence in light of the whole record, and the denial was therefore an abuse of discretion.

The court then found that, in the alternative, respondent had a vested property right, and that if the proper standard for review was therefore for the court to exercise its independent judgment, the weight of the evidence established that the development would not reduce the size of any beach or other area usable for public recreation, the development met the statutory permit requirements, and respondent had met his burden of proof thereon.

### Status of the Permit Function

Appellants first contend that the trial court applied an improper standard in reviewing the permit denial decision. They assert that the permit application procedure created by the California Coastal Zone Conservation Act of 1972 is a quasi-legislative function, and not an adjudicatory or quasi-judicial[4] determination.

---

[3]Section 27402 reads as follows:

"No permit shall be issued unless the regional commission has first found, both of the following:

"(a) That the development will not have any substantial adverse environmental or ecological effect.

"(b) That the development is consistent with the findings and declarations set forth in Section 27001 and with the objectives set forth in Section 27302.

"The applicant shall have the burden of proof on all issues."

[4]We note that the Supreme Court expressly avoided use of the term "quasi-judicial" in its opinion in *Strumsky* v. *San Diego County Employees Retirement Assn.*, utilizing the

The divergence in the rules of judicial review accorded to administrative actions is clear. The Act itself provides for review by mandate of permit decisions. (§ 27424.) If the agency proceedings are quasi-legislative, a reviewing court must proceed in ordinary mandamus (Code Civ. Proc., § 1085) and limit its examination to a determination of whether the administrative action was " 'arbitrary, capricious, or entirely lacking in evidentiary support, or whether . . . [it] has failed to follow the procedure and give the notice required by law.' " (*Pitts* v. *Perluss,* 58 Cal.2d 824, 833 [27 Cal.Rptr. 19, 377 P.2d 83], quoting *Brock* v. *Superior Court,* 109 Cal.App.2d 594, 605 [241 P.2d 283]; *Ralphs Grocery Co.* v. *Reimel,* 69 Cal.2d 172, 174-175, 179 [70 Cal.Rptr. 407, 444 P.2d 79].) If the administrative proceedings are adjudicatory, the court must proceed under Code of Civil Procedure section 1094.5, and a two-tier rule applies: if the agency decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence (§ 1094.5, subd. (c)); otherwise, the trial court's inquiry is limited to a determination of whether the findings are supported by substantial evidence in light of the whole record. (§ 1094.5, subd. (b).) (*Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 32.)

Although the result of the characterization accorded the particular administrative proceeding is thus evident, the distinction between quasi-legislative and adjudicatory determinations is sometimes difficult to draw. The parties agree that whether a particular action of an administrative agency is quasi-legislative or adjudicatory depends on the nature of the function delegated by the enabling statute, rather than the specific procedures followed.

■ "Generally speaking, a legislative action is the formulation of a rule to be applied to all future cases, while an adjudicatory act involves the actual application of such a rule to a specific set of existing facts." (*Strumsky, supra,* 11 Cal.3d at p. 35, fn. 2; *Quinchard* v. *Board of Trustees,* 113 Cal. 664, 670 [45 P. 856]; *City Council* v. *Superior Court,* 179 Cal.App.2d 389, 393 [3 Cal.Rptr. 796].) "Wherever an act undertakes to determine a question of right or obligation, or of property, as the foundation upon which it proceeds, such act is to that extent a judicial

term "adjudicatory" determination instead. (11 Cal.3d 28, 42, fn. 14 [112 Cal.Rptr. 805, 520 P.2d 29].) However, we are compelled to use the two phrases interchangeably herein, as many pre-*Strumsky* cases refer exclusively to "quasi-judicial" administrative proceedings when discussing the concept.

one, and not the proper exercise of legislative functions." (*Wulzen* v. *Board of Supervisors,* 101 Cal. 15, 24 [35 P. 353], quoting *Sinking Fund Cases,* 99 U.S. 700 at p. 761 [25 L.Ed. 504 at p. 516]; *People* v. *Oak. Board of Education,* 54 Cal. 375, 376.) Particular procedural characteristics of the administrative process are not necessarily determinative of the classification of the function. (*Rivera* v. *Division of Industrial Welfare,* 265 Cal.App.2d 576, 586-587 [71 Cal.Rptr. 739]; *Wilson* v. *Hidden Valley Mun. Water Dist.,* 256 Cal.App.2d 271, 279 [63 Cal.Rptr. 889].) Nor is the breadth or narrowness of the agency's discretion controlling. (*Pitts* v. *Perluss, supra,* 58 Cal.2d at p. 834.)

However, the subject proceedings were adjudicatory or quasi-judicial. The permit process clearly involves the application of existing rules to a specific set of existing facts. We may note that both the Supreme Court and several Courts of Appeal have assumed this proposition in entertaining actions under Code of Civil Procedure section 1094.5 for review of permit and exemption decisions by the coastal commission.[5]

Appellants contend that the permit function is "inextricably interwoven" with the undoubtedly quasi-legislative planning function of the coastal commission. However, each permit decision is based upon the application of the specific standards set forth in Public Resources Code section 27402. The mere fact that the development must be found consistent with the broadly stated findings, declarations and objectives of the Act (§§ 27001 and 27302) does not make the permit decision a "fundamentally political question" as appeared in the case most strongly urged by appellants, *Wilson* v. *Hidden Valley Mun. Water Dist.* (256 Cal.App.2d 271, at p. 281; *People* v. *Oak. Board of Education, supra,* 54 Cal. at p. 377). The permit proceedings, while obviously and expressly encompassing the same goals as the ultimate coastal plan, is nonetheless concerned with the *current* application of the Act's existing findings, declarations and objectives to particular permit applications involving existing factual situations, as adduced at evidentiary hearings. This is the essence of an adjudicatory determination.

### No Fundamental Vested Right

As observed earlier, such adjudicatory determinations by administrative agencies are subject to two possible rules of judicial review,

[5] E.g., *Urban Renewal Agency* v. *California Coastal Zone Conservation Com.,* 15 Cal.3d 577 [125 Cal.Rptr. 485, 542 P.2d 645]; *State of California* v. *Superior Court,* 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 1281]; *Aries Dev. Co.* v. *California Coastal Zone Conservation Com.,* 48 Cal.App.3d 534 [122 Cal.Rptr. 315]; *Transcentury Properties, Inc.* v. *State of California,* 41 Cal.App.3d 835 [116 Cal.Rptr. 487].

depending on whether or not the administrative decision substantially affects a fundamental vested right. Although the trial court made findings and conclusions under both the "substantial evidence" and "independent judgment" rules, in each instance holding for respondent, the importance of determining on this appeal whether a fundamental vested right was substantially affected by the permit decision must be recognized.

If the trial court was authorized to exercise its independent judgment on the evidence, the appellate court can overturn its factual findings "only if the evidence received by the trial court, including the record of the administrative proceeding, is insufficient as a matter of law to sustain the finding." If the trial court was limited to the substantial evidence test itself, however, "the trial and appellate courts occupy identical positions with regard to the administrative record, and the function of the appellate court, like that of the trial court, is to determine whether that record is free from legal error." (*Merrill* v. *Department of Motor Vehicles,* 71 Cal.2d 907, 915-916 [80 Cal.Rptr. 89, 458 P.2d 33].) Thus, in the first instance the appellate court need only review the record to determine whether the *trial court's* findings are supported by substantial evidence; in the second, the appellate court itself reviews the administrative record to determine whether the agency's decision was supported by substantial evidence. (*Bixby* v. *Pierno,* 4 Cal.3d 130, 143, fn. 10, 149 [93 Cal.Rptr. 234, 481 P.2d 242].) ■ We have concluded that the permit decision did not substantially affect a fundamental vested right of respondent, and therefore this court must review the whole administrative record to determine whether the agency's determination was supported by substantial evidence.

The trial court, while finding that the regional commission's permit denial was not supported by substantial evidence in light of the whole record, also alternatively found that respondent "as owner, subdivider and improver of the property prior to February 1, 1973, had a valuable vested property right although while not vested within the meaning of Section 27404 of the Public Resources Code making an application for a permit unnecessary, would be substantially inequitably and adversely affected by the denial of a permit by [appellants]." The court concluded that the decision "substantially affected a fundamental vested property right of [respondent] which, while not deemed to be vested within the provisions of [§ 27404], is vested within the meaning of . . . [*Strumsky*]."

Respondent acknowledges that he does not have the vested right provided in section 27404, entitling him to exemption from the permit requirements of the Act.[6] In granting respondent's exemption application for the development consisting of the subdivision and one house under construction and denying exemption as to the remaining four proposed houses, the regional commission implicitly rejected respondent's assertions (in his application form) that (1) the entire scheme, including construction of the four houses here at issue, was a "single, interrelated development" entitled to exemption in toto, and (2) that respondent had a vested right to construct the four houses. Having failed to appeal this determination, respondent realizes that he cannot attack the exemption decision here. However, respondent urges (and the court below agreed) that this does not preclude him from asserting the existence of a vested right "as that term is used for purposes of determining the appropriate scope of judicial review."

We may assume that respondent's asserted right is fundamental. (*Transcentury Properties, Inc. v.* State of California, supra, 41 Cal.App.3d 835 at p. 844 [116 Cal.Rptr. 487].) However, respondent's claim of a vested property right is without merit.

Respondent essentially contends that the "actions of the Regional Commission in effect tell respondent that while his right to subdivide is vested, as it had been accomplished, he may not achieve the final fruits of that process." Respondent cites no authority for the proposition that a vested right to perform specified preconstruction activities entitles a developer to "the final fruits" of the development process, whatever they may be. "The property owner acquires a vested right to continue a use 'actually instituted,' not to capitalize upon anticipated profit." (*Anderson v. City Council,* 229 Cal.App.2d 79, 88-89 [40 Cal.Rptr. 41], quoting *Jones v. City of Los Angeles,* 211 Cal. 304 [295 P. 14].)

---

[6]Section 27404 reads as follows: "If, prior to *November 8, 1972,* any city or county has issued a building permit, no person who has obtained a vested right thereunder shall be required to secure a permit from the regional commission; providing that no substantial changes may be made in any such development, except in accordance with the provisions of this division. Any such person shall be deemed to have such vested rights if, prior to *November 8, 1972,* he has in good faith and in reliance upon the building permit diligently commenced construction and performed substantial work on the development and incurred substantial liabilities for work and materials necessary therefor. Expenses incurred in obtaining the enactment of an ordinance in relation to the particular development or the issuance of a permit shall not be deemed liabilities for work or material."

Respondent acknowledges (and his permit application form and administrative hearing testimony admit) that he had not even applied for building permits for the four houses prior to the effective date of the Act, and thus of course, had not yet incurred expenses in reliance thereon. However, he argues that "[t]he right, admittedly vested, to subdivide means nothing if he cannot utilize the lots created for homesites."

This contention ignores the basis for the vested rights theory: governmental estoppel. Where an owner of property, in good faith reliance upon a governmental representation that construction is fully approved, has suffered substantial detriment by proceeding with development, the government is estopped from prohibiting the project by a subsequent change in law. (*Cooper* v. *County of Los Angeles,* 49 Cal.App.3d 34, 42 [122 Cal.Rptr. 464]; *Aries Dev. Co., supra,* 48 Cal.App.3d at p. 548.) "Where no such permit has been issued, it is difficult to conceive of any basis for such estoppel." (*Anderson* v. *City Council, supra,* 229 Cal.App.2d at p. 89; *Spindler Realty Corp.* v. *Monning,* 243 Cal.App.2d 255, 263, 269 [53 Cal.Rptr. 7].) "[U]nless the owner possesses *all* the necessary permits, the mere expenditure of funds or commencement of construction does not vest any rights in the development." (*People* v. *County of Kern,* 39 Cal.App.3d 830, 838 [115 Cal.Rptr. 67]; italics added.)

It may be true that "[a]lthough the cases speak of vested rights in terms of reliance upon a *building permit* [citations omitted] . . . a building permit may no longer be a *sine qua non* of a vested right. . . . [U]nder modern land development practices various governmental approvals are required before the issuance of a building permit, each approval pertaining to different aspects of the project, and . . . a vested right might arise before the issuance of a building permit if the preliminary permits approve a specific project and contain all final discretionary approvals required for completion of the project." (*Aries Dev. Co., supra,* 48 Cal.App.3d at p. 544; *Urban Renewal Agency, supra,* 15 Cal.3d at p. 583; *Environmental Coalition of Orange County, Inc.* v. *AVCO Community Developers, Inc.,* 40 Cal.App.3d 513, 523-525 [115 Cal.Rptr. 59].)

Although respondent so asserts in his brief, the record contains no evidentiary support for his claim that he had in fact obtained all final discretionary approvals and acted in reliance thereon prior to the effective date of the Act,[7] or that he had complied with all legal

---

[7]Respondent did receive "approval in concept" from the city dated July 9, 1973. However, this does not indicate that the discretionary approvals enumerated were

requirements for issuance of a building permit, making the issuance a ministerial act. (*Anderson* v. *City Council, supra,* 229 Cal.App.2d at p. 88; *Ellis* v. *City Council,* 222 Cal.App.2d 490, 497 [35 Cal.Rptr. 317].) Thus, the refinement of the vested rights principle noted above does not aid respondent, for the record does not allow either the trial court or this court to find that, in spite of the lack of a building permit, respondent had acquired a vested right to construct the houses. Mere approval of and expenditure on subdividing and grading activities, without more, create no additional vested rights beyond the scope of such limited approval (*Aries Dev. Co., supra,* 48 Cal.App.3d at p. 551; *Environmental Coalition of Orange County, supra,* 40 Cal.App.3d at p. 523; *Spindler Realty Corp., supra,* 243 Cal.App.2d at pp. 264, 268) and plans regarding future use do not extend the developer's protection. (*Anderson* v. *City Council, supra,* 229 Cal.App.2d at p. 88.)

### The Two-Thirds Vote Requirement

Having determined that no fundamental vested right of respondent was affected by the permit decision, we must proceed to evaluate the agency's determination under the substantial evidence rule.

Respondent first contends (and the trial court concluded) that there was no substantial evidence to support the regional commission's requirement of a two-thirds vote for permit approval. The commission based this requirement on section 27401, subdivision (b), having determined that the development would reduce the size of a "beach or other area usable for public recreation."[8] ■ The administrative record unequivocally indicates that the property in question is a sandy dunes area, similar to the adjacent public beach; several persons described the property as either "beach" or "sand dunes." The photographs in the record, presented as a slide exhibition to the regional commission, confirm this characterization.

One witness for respondent did testify that the property was not *currently used* as a public recreational area, and was not a "games area"

___

received *prior to the Act.* Moreover, as the document states, the regulations then in effect (Cal. Admin. Code, tit. 14, § 13210, amended Dec. 3, 1973) required only final discretionary approval of the general site plan, grading plan, and general uses for "approval in concept."

[8]We note that the section is in the alternative; i.e., the development would reduce the size of a beach *or* other area usable for public recreation. The section does not require that the property be both a beach and usable for public recreation.

nor "traversible" by the public as it was separated from the adjacent public beach by some bushes and a low wall. Of course, this is consistent with its current private ownership status. Even viewed in isolation, however, this testimony does not support a finding that the property *is not a beach.*

### Vote to Approve Findings

Respondent next asserts that the regional commission actually adopted the findings required by section 27402 for permit approval. He argues that, although the permit approval itself may have required a two-thirds vote under section 27401, no such supermajority provision appears in section 27402, and, a majority of the commission having voted in favor of the permit, that majority made the findings specified in section 27402.

This contention ignores basic tenets of statutory construction. The various parts of an enactment must be harmonized by considering the particular section in the context of the statutory framework as a whole. (*Moyer* v. *Workmen's Comp. Appeals Bd.,* 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) Moreover, statutes must be given a reasonable and common sense construction, rather than one that will lead to an absurdity. (*City of El Monte* v. *City of Industry,* 188 Cal.App.2d 774, 782 [110 Cal.Rptr. 802].)

Section 27400 provides that, in most cases, permits shall not be issued without a majority vote of the total authorized membership of the commission. Section 27401 provides that in certain instances, including those where development would reduce the size of any beach or other area usable for public recreation, permits shall not be issued without a two-thirds vote of the total authorized membership. Section 27402 provides that no permit shall be issued unless the commission makes certain findings in favor of the applicant.

It appears self-evident that, where a two-thirds vote is required for permit approval, the findings required by section 27402 must be made by the same two-thirds vote. Respondent's argument would lead to the anomalous possibility of a permit denial (for failure to garner the necessary two-thirds approval) in spite of findings in favor of the applicant (by majority, but less than two-thirds, vote). As appellants observe, once the affirmative findings required by section 27402 are *properly made* by the commission, denial of a permit by the same commission would be by definition arbitrary and capricious. Therefore,

when read in conjunction with sections 27400 and 27401, section 27402 must require findings made by the same affirmative vote of the total authorized membership of the commission as required to approve the permit. In the instant case, the vote was taken on respondent's application with the express understanding by the commissioners that permit denial would also constitute acceptance of the negative findings, recommended by the executive director. The resolution therefore properly stated the findings adopted by the regional commission, although it erred in reflecting the actual vote as nine to three in favor of *denial* of the permit.

## Due Process

Respondent's final attack on the two-thirds vote is a simple allegation that the provision is unfair, and a denial of due process. He cites only cases stating the basic rule requiring due process in administrative hearings.

The requirements of procedural due process "depend on a variety of complex factors such as the nature of the claimed procedural rights, the extent of interference with the private interest, and the governmental interest involved." (*CEEED* v. *California Coastal Zone Conservation Com.,* 43 Cal.App.3d 306, 317 [118 Cal.Rptr. 315].) Respondent cites no authority holding that a greater-than-majority (or even a unanimous) vote requirement in an administrative decision-making process is violative of due process.

The permit procedure itself has already been held to be in accordance with the dictates of procedural due process. (*CEEED, supra,* 43 Cal.App.3d at pp. 329-330.) Moreover, the courts have observed that "even more severe restrictions on the use of private property than those provided by the Act," including total proscription of development activities, have been upheld as proper interim measures. (*State of California* v. *Superior Court, supra,* 12 Cal.3d at pp. 253-255; *CEEED, supra,* 43 Cal.App.3d at pp. 313-316.) ■ The coastal initiative instead chose an interim permit procedure, with a two-thirds vote needed for approval of developments in particularly sensitive areas. This is a valid exercise of the police power, and does not deprive respondent (or other permit applicants whose proposed developments fall within the two-thirds requirement of section 27401) of any procedural due process rights.

Respondent also asserts that he was denied an impartial hearing by virtue of a "built-in bias in the membership of the Regional Commission." This argument was thoroughly disposed of in *CEEED* v. *California Coastal Zone Conservation Com., supra*; we agree with that court that the "bias" of which respondent complains "is not fixed by the statutory provision for the composition of the commissions [§ 27220]" but results instead from the "declared policy of the Act." (43 Cal.App.3d at p. 328.)

*Findings Supported by*
*Substantial Evidence*

The final question, then, is whether the findings of the regional commission, upon which the permit denial was based, are supported by substantial evidence in the administrative record.

As observed earlier, section 27402 prohibits issuance of a permit unless the regional commission first finds *both* (a) that the development will not have a substantial adverse environmental or ecological effect, and (b) that the development is consistent with the findings and declarations in section 27001[9] and the objectives in section 27302.[10] "The statutory

---

[9]Section 27001 reads as follows:

"The people of the State of California hereby find and declare that the California coastal zone is a distinct and valuable natural resource belonging to all the people and existing as a delicately balanced ecosystem; that the permanent protection of the remaining natural and scenic resources of the coastal zone is a paramount concern to present and future residents of the state and nation; that in order to promote the public safety, health, and welfare, and to protect public and private property, wildlife, marine fisheries, and other ocean resources, and the natural environment, it is necessary to preserve the ecological balance of the coastal zone and prevent its further deterioration and destruction; that it is the policy of the state to preserve, protect, and, where possible, to restore the resources of the coastal zone for the enjoyment of the current and succeeding generations; and that to protect the coastal zone it is necessary:

"(a) To study the coastal zone to determine the ecological planning principles and assumptions needed to ensure conservation of coastal zone resources.

"(b) To prepare, based upon such study and in full consultation with all affected governmental agencies, private interests, and the general public, a comprehensive, coordinated, enforceable plan for the orderly, long-range conservation and management of the natural resources of the coastal zone, to be known as the California Coastal Zone Conservation Plan.

"(c) To ensure that any development which occurs in the permit area during the study and planning period will be consistent with the objectives of this division.

"(d) To create the California Coastal Zone Conservation Commission, and six regional coastal zone conservation commissions, to implement the provisions of this division."

[10]Section 27302 reads as follows:

"The coastal zone plan shall be consistent with all of the following objectives:

"(a) The maintenance, restoration, and enhancement of the overall quality of the

objectives expressed in section 27302 are: preservation, restoration and enhancement of the coastal zone environment, including its aesthetic values; encouragement of optimum population of living organisms; balanced and orderly use of coastal resources; and avoidance of 'irreversible and irretrievable commitments' of those resources." (*CEEED, supra,* 43 Cal.App.3d at p. 327.)

The commission found that: "[S]aid development will have substantial adverse environmental and ecological effect and is not consistent with . . . [sections 27001 and 27302] in that: 1) Construction on a sand beach-dune area adjacent to a public beach prior to adoption of a coastal recreation and open space plan is premature, 2) Public acquisition of this parcel has been contemplated, and, at present, has been rejected for lack of funds . . . . With the designation as a priority acquisition, funds are likely to be mobilized from other public agencies or private parties. The decision whether or not to acquire these and similar parcels for public use is a mandatory element of the forthcoming Coastal Zone Conservation Plan."

Appellants apparently concede that there was no evidentiary support whatever for the finding that the development would have a substantial adverse environmental and ecological effect. Indeed, all the evidence in the record, including the declaration of the city planning director and the commission staff's own report, is to the contrary.

■ However, there is substantial evidence in light of the record as a whole to support the finding that the development would be premature, and thereby (at the least) inconsistent with the objective of ensuring that development in the permit area during the study and planning period would be consistent (§ 27001, subd. (c)) with the "[a]voidance of irreversible and irretrievable commitments of coastal zone resources." As discussed above, the record shows that the city and respondent recognized the potential recreational value of the property, and public acquisition had been rejected only for lack of funds, not lack of interest.

---

coastal zone environment, including, but not limited to, its amenities and aesthetic values.

"(b) The continued existence of optimum populations of all species of living organisms.

"(c) The orderly, balanced utilization and preservation, consistent with sound conservation principles, of all living and nonliving coastal zone resources.

"(d) Avoidance of irreversible and irretrievable commitments of coastal zone resources."

It is true that the record does not support the finding that "funds are likely to be mobilized from other public agencies or private parties"; however, such a finding is unnecessary to support a decision by the commission to forestall as "premature" development of a scenic and potentially valuable recreational resource during the interim period until the coastal plan is adopted and availability of outside funds actually determined.

The evidence indicates that the property is substantially similar to the adjacent public beach area, although the city had been unable to purchase it in the past. Respondent's proposed development would commit the land to private residences for the foreseeable future. The policy expressed in the Act includes protection and preservation of the remaining natural and scenic resources of the coastal zone. "[T]he requirement for a permit is an interim measure to assure that developments in the coastal zone are consistent with the objectives of the Act so that priceless coastal resources are not irreversibly committed to uses which would be inconsistent with the plan ultimately developed." (*State of California* v. *Superior Court, supra,* 12 Cal.3d at p. 253.) Contrary to respondent's assertions, this does not allow appellants to deny permits on "mere speculation"; rather, the statute mandates permit denial when an applicant fails to prove consistency of the proposed development with the objectives of the Act. (§ 27402.) While the effect of the scheme may be to prohibit much, or even most, development within the coastal zone during the interim permit period, we reiterate that this is a legitimate exercise of the police power. (*CEEED, supra,* 43 Cal.App.3d at pp. 329-330.)

As section 27402 prohibits permit issuance unless the commission makes *both* findings therein required, and there is substantial evidence to support the commission's finding of inconsistency with the Act's objectives, that finding is sufficient to support the permit denial decision.

The judgment is reversed with directions to the trial court to deny the petition for writ of mandate.

Rattigan, J., and Christian, J., concurred.