[No. D005570. Fourth Dist., Div. One. Oct. 27, 1987.]

CAROLINA W. BARRIE et al., Plaintiffs and Appellants, v. CALIFORNIA COASTAL COMMISSION, Defendant and Respondent.

**COUNSEL**

Musick, Peeler & Garrett, James B. Bertero and John S. Murray for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, N. Gregory Taylor and Jamee Jordan Patterson, Deputy Attorneys General, for Defendant and Respondent.

OPINION

KREMER, P. J.—The appellants (Homeowners herein) appeal the denial of their petition for a writ of mandate to order the California Coastal Commission (Commission) to allow a temporary seawall constructed under an emergency permit to remain in place until the City of Del Mar adopts a permanent shoreline protection plan and the Commission's review of that plan is final.

On appeal, the Homeowners contend they have a vested right to continue the seawall at its present location and that the Commission's findings supporting its decision requiring the seawall be removed and relocated are unsupported by the evidence. We conclude the Homeowners have no vested right to continue the seawall at its current location and that the Commission's decision requiring relocation of the seawall is supported by the evidence and represents a reasonable accommodation between the need to protect the public beach and the Homeowners' need to protect their residences.

FACTS

The Homeowners own residences fronting the beach in Del Mar between 24th and 26th Streets. During the summer of 1983, responding to United States Weather Service predictions of severe storms and high tides for fall 1983, the Homeowners began construction of a 480-foot long seawall in front of their residences on the public beach. Citizens observing the construction notified the Commission. The Commission verified the construction and then contacted the Homeowners to inform them that the seawall violated the Coastal Act and the Homeowners needed a Coastal Commission permit. While construction continued, the Homeowners applied for an emergency permit. The application was filed on July 29, 1983. The same day the Commission issued an emergency permit for the seawall. In condition 4 of the permit, the Commission required the Homeowners to "apply for a regular Coastal Permit to have the emergency work be considered permanent" within 60 days and stated that "[i]f a regular permit [was] not received, the emergency work [was to] be removed in its entirety within 150 days of the above date unless waived by the Director." The Commission further stated in the permit that "Condition #4 indicates that the emergency work is considered to be a temporary work done in an emergency

situation." Condition 8 of the permit stated: "The applicants acknowledge that, pursuant to the regular hearings and final decision of the Coastal Commission, the herein permitted emergency work may be required to be modified."

The Commission staff warned the Homeowners that the location of the temporary seawall was very controversial and that there was a strong likelihood the staff would recommend relocation of the seawall if the Homeowners applied for approval for a permanent seawall. The Commission staff "urged [the Homeowners] to keep this in mind and not to invest excessive amounts of money in the proposed development."

The Homeowners' seawall ranges from 19 to 25 feet seaward of the Homeowners' residences and encroaches on 15 feet of the public beach. It displaces over 7,200 square feet of sandy beach including the street ends at 24th, 25th and 26th Streets. The Homeowners spent over $300,000 on constructing the seawall. Behind the seawall, without authorization, the Homeowners installed nonstructural privacy walls and brick pavers so the area behind the seawall resembles private patios.

On September 27, 1983, the Homeowners submitted an application to make the seawall permanent. The Commission staff recommended approval subject to requiring removal of the seawall and relocation to a site no further than five feet from the property lines in the event the City of Del Mar did not submit a comprehensive shoreline protection plan for review and approval by the Commission before October 1984. The staff also recommended removal of the brick pavers and privacy walls.

A public hearing on the Homeowners' application was held before the Commission on December 15, 1983. Following the public hearing, the Commission voted to approve the Homeowners' application conditioned on the seawall being reconstructed and relocated so it encroached no more than five feet from the westerly property lines, payment for the encroachment on public property based on the fair market rent for the land with future rent to be determined in accord with the consumer price index and restoration of public access at 24th, 25th and 26th Streets. The Commission required the existing seawall and riprap as well as the brick pavers and privacy walls to be removed by June 1, 1984. The Commission adopted findings to support their decision conditionally approving the seawall.

After the Commission's decision, the deadline for removing the seawall was extended by written stipulations and by the Commission because the City of Del Mar was considering a beach overlay zoning ordinance involving seawalls. After nearly two years had passed since the Homeowners

constructed the seawall, the Commission staff recommended against further administrative extensions and advised the Homeowners to petition for a formal amendment to allow the seawall to remain in place pending Del Mar's adoption of a shoreline protection plan. The Homeowners filed for an amendment. During the public hearing on June 14, 1985, the Commission granted the application for an amendment and extended the deadline for removing the seawall to September 15, 1985.

On September 23, 1985, the Homeowners filed for another amendment because Del Mar had not yet adopted a shoreline protection plan. The Homeowners this time sought an indefinite extension. The Commission rejected the request because the City was no longer actively working on a beach overlay zone and there was no assurance such an ordinance would ever be adopted. The Commission also determined the continuation of the seawall would be inconsistent with Coastal Act policies.

DISCUSSION

I

■ The Homeowners assert that a "fundamental vested right" is involved and therefore we should review the Commission's decision using the independent judgment test rather than the substantial evidence rule.

Under the independent judgment test, the trial court examines the administrative record to see if in its view the weight of the evidence supports the agency's decision. (*Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833 [130 Cal.Rptr. 169]; Code Civ. Proc., § 1094.5, subd. (c).) ■ In contrast, under the substantial evidence test, the superior court reviews the record to see if it contains substantial evidence to support the decision. (*City of San Diego* v. *California Coastal Com.* (1981) 119 Cal.App.3d 228, 232 [174 Cal.Rptr. 5].) ■ In either case, on appeal the reviewing court uses a substantial evidence standard of review and may overturn the factual findings only if the evidence is insufficient as a matter of law to sustain the findings. (*Whaler's Village Club* v. *California Coastal Com.* (1985) 173 Cal.App.3d 240, 251, cert. den. and appeal dism. (May 19, 1986) 476 U.S. 1111 [90 L.Ed.2d 648, 106 S.Ct. 1962].)

■ A fundamental vested right has been termed a right "already possessed" (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 146 [93 Cal.Rptr. 234, 481 P.2d 242]) or "legitimately acquired" (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29]). " '[A] vested right for review purposes means a preexisting right while a vested right for construction means a right the government is

estopped to deny.' [Citation.] However, the test for ' "vestedness" ' and ' "fundamentalness" ' is one and the same." (*Whaler's Village Club* v. *California Coastal Com., supra,* 173 Cal.App.3d at p. 252.) The Supreme Court has explained " '[t]he ultimate question in each case is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking judicial power. [Citations.]' " (*Frink* v. *Prod* (1982) 31 Cal.3d 166, 176 [181 Cal.Rptr. 893, 643 P.2d 476], italics omitted.)

█ In general, an individual has no "vested right to protect property in a particular manner where the method chosen is one that is regulated by government . . . ." (*Whaler's Village Club* v. *California Coastal Com., supra,* 173 Cal.App.3d at p. 253.) The government, however, may be estopped from denying or conditioning a permit when a property owner in good faith reliance on a permit or a representation that construction is fully approved performs a substantial amount of work and thereby suffers a detriment by proceeding with the development. (See *Patterson* v. *Central Coast Regional Com., supra,* 58 Cal.App.3d at p. 844; *Davis* v. *California Coastal Zone Conservation Com.* (1976) 57 Cal.App.3d 700, 708 [129 Cal.Rptr. 417]; *Stanson* v. *San Diego Coast Regional Com.* (1980) 101 Cal.App.3d 38, 49 [161 Cal.Rptr. 392].)

█ The Homeowners argue the Commission should be estopped here because they "obtained permits from both the Commission and the City of Del Mar and pursuant thereto constructed a protective seawall at a cost of in excess of $300,000." Essentially, the Homeowners argue: a permit plus a substantial expenditure of money equals a vested right. This equation, however, ignores an important variable: the duration of the permit. The permit here was not a permit for a permanent seawall at that location; it was an emergency permit, issued without a prior hearing, for a temporary seawall. By its terms, the permit authorized a seawall only for 150 days. At the end of 150 days, the homeowners were required to apply for permanent approval. By the emergency permit, the Homeowners acquired, at most, a 150-day vested right to the seawall.

In support of their argument the Commission should be estopped, the Homeowners assert "the Commission staff assured [them] that the final approval process would be perfunctory . . . ."

The record shows that at the hearing before the Commission, District Commissioner Crandall testified that when the emergency permit was issued, the Commission staff told the Homeowners that their interim protective seawall was in a very controversial location and that there was a strong likelihood the staff would recommend relocation of the seawall when the

matter came up for a hearing. The staff also advised the Homeowners to keep this in mind and not to invest excessive amounts of money in building the seawall authorized by the emergency permit.

The record does not establish the Commission staff ever told the Homeowners that the final approval process would be "perfunctory." Rather, at the pages cited by the Homeowners to support their assertion, the Homeowners' attorney, while admitting the permit was only for a temporary structure, pointed out the emergency permit stated only that the seawall might have to be "modified" (not relocated) before final approval. The Homeowners' attorney denied the Commission staff told the Homeowners it was likely the staff would recommend relocation of the seawall.

This represents a conflict in the evidence as to whether the Commission staff specifically told the Homeowners they would recommend relocation of the seawall. In accord with the substantial evidence rule which requires us to regard as true all evidence in favor of the judgment, we must accept as established the Commission staff's warning to the Homeowners that the location of the seawall was controversial and that it was likely the staff would recommend relocation.

■ The Homeowners complain the trial court did not use the appropriate standard for deciding the preliminary issue as to whether the facts gave rise to an estoppel. They argue the trial court should have independently reviewed the record and should not have employed a substantial evidence review. (See *Halaco Engineering Co.* v. *South Central Coast Regional Com.* (1986) 42 Cal.3d 52 [227 Cal.Rptr. 667, 720 P.2d 15].)

Here, the record is silent as to what standard of review the trial court used for determining the preliminary factual issue. On appeal, the appellant bears the burden of establishing error. When the record is silent, we must presume the judgment is correct and that the trial court used the correct standard of review. (See *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 268, 276-277, pp. 276-289.) Here, the record is silent as to what standard the trial court used and the Homeowners are unable to establish the trial court used an improper standard. Thus, reversal is not mandated on this basis. ■ Further, the facts here are such that, as a matter of law, the Homeowners cannot establish a vested right to continue the seawall as they wish.

Even if we believed the Homeowners that had the trial court used a different standard it would have concluded the Commission did not affirmatively warn the Homeowners that the seawall might have to be

moved, the remaining facts favorable to the Homeowners are insufficient to establish an estoppel. The undisputed facts are: (1) the emergency permit was issued for a temporary structure, (2) the emergency permit stated the Commission might require the seawall to be "modified," (3) the emergency permit did not specifically state the Commission might require relocation of the seawall. In other words, the Homeowners' contention of estoppel does not rest on any affirmative misrepresentation by the Commission but on a failure of the Commission to specifically warn the Homeowners that, following a hearing, the Commission might not make the location of the seawall permanent. This argument, of course, directly conflicts with the express terms of the emergency permit which state the permit authorizes only a temporary structure.

■ Further, we find there are strong public policy reasons militating against granting individuals vested rights to permanent structures based on emergency permits. The Coastal act aims to "[p]rotect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and artificial resources" and to "[a]ssure orderly, balanced utilization and conservation of coastal zone resources . . . ." (Pub. Resources Code, § 30001.5, subds. (a), (b).)[1] The Legislature has declared that when different policies of the act are in conflict, "conflicts [are to] be resolved in a manner which on balance is the most protective of significant coastal resources." (§ 30007.5.) The Legislature has also stressed the desirability of public participation in decisions affecting coastal planning, conservation and development. (§ 30006.)

The Coastal Act provides for permits without complying with the Coastal Act's procedures when there is an emergency. (See § 30264; Cal. Admin. Code, tit. 14, § 13136 et seq.) An "emergency" is defined as "a sudden unexpected occurrence demanding immediate action to prevent or mitigate loss or damage to life, health, property or essential public services." (Cal. Admin. Code, tit. 14, § 13009.) An emergency permit may be issued without a hearing, without an opportunity for the public to participate or for the Commission to fully consider the facts and circumstances of the case. (See § 30624; Cal. Admin. Code, tit. 14, § 13140 et seq.) Issuance of such a permit circumvents the act's procedures which are designed to ensure protection of the coastline and input by the public and is justifiable only in the case of an emergency. To allow the vesting of a right to a permanent structure based on an emergency permit would undermine the Coastal Act's policies of informed decisionmaking and public participation and would encourage individuals to circumvent the Coastal Act's procedures as a

---

[1] All references are to the Public Resources Code unless otherwise indicated.

matter of course. This is what the Homeowners are attempting to do in this case.

■ Here, the Homeowners began construction of their seawall without seeking any prior approval by the Commission. Even after they were notified they were in violation of the Coastal Act, the Homeowners continued construction. The "emergency" was, in a sense, created by the Homeowners. While it may be true the construction was prompted by the United States Weather Service's predictions of especially severe storms and high tides for fall 1983, it is also true that severe storms and high tides are inevitably going to occur and endanger coastal property. The Homeowners waited until the last minute to build their seawall and thus allowed an "emergency" situation to develop. Further, by not applying for a permit until after the seawall was under construction and substantial sums of money had been spent, the Homeowners essentially coerced the Commission's approval of the placement of the seawall since the seawall was already in place. As a practical matter, the Homeowners did not give the Commission an opportunity to direct the placement of the seawall. If the Homeowners' argument were to prevail here, then any individual could obtain a right to a permanent seawall at any location by ignoring the Coastal Act's permit requirements, building a seawall anywhere they saw fit not long before the winter storm season, obtaining an emergency permit without a hearing and thereby vesting a right to continue the seawall at the chosen location indefinitely. We cannot hold individuals should be entitled to a vested right because they have circumvented the Coastal Act procedures.

We conclude the Homeowners do not have a vested right to continue the seawall in its present location and the trial court correctly reviewed the administrative record using the substantial evidence standard of review.

## II

■ The Homeowners contend the Commission's finding that removal and relocation of the seawall will not impose an unreasonable economic hardship on the Homeowners is not supported by the evidence.

In making this contention, the Homeowners point to the Commission's statement that the cost of relocation will be less than the original price of the seawall because of the reuse of construction materials and contrast this statement with the statement of the Homeowners' contractor who declared relocating the seawall and attempting to reuse the same materials might be more costly than using new materials.

The possible savings that might be realized from reusing materials was not, however, the sole basis for the Commission's finding relocation would

not result in unreasonable economic hardship. The Commission also stated: "While the additional costs are substantial to relocate the permitted structures, it is not onerous when compared to possibly spending thousands of dollars annually to import riprap and temporarily protect a shoreline residence as is typically done every winter. It is also not as burdensome when recognizing the derived benefits of the applicant and protecting the overriding and precedential rights of the public."

The Homeowners do not contest that the annual importation and removal of riprap and temporary protective structures will, in the long run, impose a greater economic hardship than the removal of the temporary seawall and building of a permanent seawall at another location. Indeed, one of the premises of the Homeowners' appeal is that removal of their temporary seawall is an expensive proposition. Further, as the Commission also found, the Homeowners' economic hardship in having expended substantial amounts of money in building the temporary seawall and in losing that investment due to relocation is the result of the Homeowners' actions; the Homeowners were specifically warned not to spend excessive amounts of money in building the temporary seawall right from the beginning.[2]

We find substantial evidence supports the conclusion removal and relocation of the seawall does not constitute an undue economic hardship, when compared to the alternatives.

### III

The Homeowners contend the Commission's finding that its decision addressed the Homeowners' need to protect their property is not supported by the evidence.

In support of their contention, the Homeowners point to an engineering study (Noble Report) of beach protection devices by R.M. Noble & Associates which was commissioned by the City of Del Mar. The Noble Report recommends placement of a seawall about 25 to 30 feet seaward of the building facings, a location which approximates the location of the Homeowners' temporary seawall. However, as was brought out at the

---

[2] The Commission stated: "The atmosphere of an emergency, as in these cases, where the applicants felt immediate danger from anticipated high tidal regimes and were leery of receiving a regular permit in an expeditious manner to allow construction before any early storms, elicits strong sentiment. While such sentiments are evoked, the applicants were warned that any emergency work was one of enormous risk, both initially at the time of first discussion and formally in the conditions of the issued emergency permit which was acknowledged and signed. Additionally, the applicant's permit from the City classifies it as an interim barrier, not to remain beyond 30 months and any excessive commitment of funds is therefore circumspect."

hearing before the Commission, the Noble Report was commissioned to study beach protection devices at that particular location so it is of limited significance that the Noble Report focused on a location 25 to 30 feet seaward of the buildings. Further, the record shows that R.M. Noble & Associates was contacted and confirmed the seawalls could be located closer to the buildings and on the private property lines.

The Commission did not fail to consider the Homeowners' need to protect their property. Evidence was considered and the Commission issued a permit for a permanent seawall specifically in consideration of the Homeowners' need to protect their homes.

## IV

 The Homeowners contend the evidence does not support the Commission's finding that the seawall, as conditioned, is consistent with sections 30235 and 30253 of the Coastal Act. These sections allow the Commission to approve seawalls if required to protect existing structures in danger from erosion and when designed to eliminate or mitigate adverse impacts on local sand supply (§ 30235) and require that new developments shall "neither create nor contribute significantly to erosion, geologic instability, or destruction of the site or surrounding area" (§ 30253).

The Homeowners attack the Commission findings in this area on two grounds: (1) that their seawall is not a "new development" and therefore is exempted from section 30253 and (2) it is not clear the seawall will "probably" have an adverse effect on the sand supply.

 The Homeowners' argument the seawall is not a "new development" is a variation on their vested rights argument and must fail for the same reasons. The approval the Homeowners are seeking here is for a new development, i.e., a permanent seawall (or a continued right to the existing seawall until the seawall location is disapproved by the City of Del Mar) not an emergency temporary seawall. The Homeowners assert their seawall is exempted from the definition of a "new development" by section 30212, subdivision (b)(4). This section excludes from the definition of "new development" the "reconstruction or repair of any seawall; provided, however, that the reconstructed or repaired seawall is not seaward of the location of the former structure."

Section 30212 does not contradict our conclusion the Homeowners here are seeking approval for a new development. Implicit in the section 30212, subdivision (b)(4) exclusion is that the repair or renovation is to an existing seawall which an individual is entitled to maintain either because the

individual has already obtained a Commission permit to have a permanent seawall at that location or because the seawall existed before the Coastal Act became effective. Neither of those situations exists here; the Homeowners have only a right to a temporary seawall. If section 30212 were to be construed as the Homeowners suggest, then an individual could erect a wholly illegal seawall and never be required to mitigate the negative impacts of the seawall so long as the individual did nothing more than "repair" or "renovate" the seawall. Clearly, this was not contemplated when the exception was provided. (Compare *Whaler's Village Club* v. *California Coastal Com., supra,* 173 Cal.App.3d 240.)

▆▆▆▆ The Homeowners complain that the Commission finding the seawall at its present location would have a negative impact (contributing to beach erosion and loss of sand) was based only on a "possibility" or "probability" rather than on "actual occurrence." They contrast this "possible" or "probable" negative impact with the actual adverse impacts on beachfront homes caused by the 1983 winter storms and argue "[t]hese very real losses far outweigh the potential impacts the Commission has identified, . . ."

The Commission's findings that seawalls generally and vertical seawalls such as the Homeowners' seawall specifically cause beach erosion and sand loss were not based merely on speculation but on numerous well-documented reports. Even the Noble Report, relied on by the Homeowners, recognizes that vertical seawalls can have a negative impact on beach erosion. The Commission's findings were not based on a mere possibility of beach erosion, but on a strong probability as documented in numerous studies. The studies also suggested that the further a seawall is from the breaking waves, the less adverse the probable impact.

There is nothing improper about the Commission basing its findings on probabilities that are inherent in decisionmaking involving protective structures. This is demonstrated by the Homeowners' own arguments which are based on probabilities. While it may be true, as the Homeowners assert, that the 1983 storms actually damaged beachfront residences, those storms are past events. The Homeowners are not seeking a seawall to protect their residences from a past event, from a historical storm; they are seeking protection from the possibility or probability of future storms similar to those storms which occurred in 1983.

The Commission here was faced with balancing probabilities—the probability of beach erosion caused or contributed to by the seawall and the probability there will be future storms which will threaten beachfront residences. They weighed the need to protect the public beach against the Homeowners' need to protect their homes. The condition requiring

relocation of the seawall was a reasonable accommodation of these two needs since it mitigated the negative impact on the beach while still affording the Homeowners the opportunity to protect their homes. Moreover, this accommodation must be viewed in light of another purpose of the Coastal Act, that of insuring public access. (See § 30210; *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d.158, 163 [188 Cal.Rptr. 104, 655 P.2d 306]; *CEEED* v. *California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306, 321 [118 Cal.Rptr. 315].)

The Homeowners' seawall encroached 15 feet onto the public beach.[3] The seawall blocks public access at the street ends and discourages public access immediately in front of the seawall where there is riprap.[4] The seawall displaces over 7,200 square feet of sandy beach. By relocating the seawall 10 feet further inland, the adverse impact on public access is lessened and the Homeowners are still afforded more protection than they would have if the Commission required the seawall to be built wholly on the Homeowners' private property.

We conclude the evidence supports the Commission's finding that the seawall as conditioned is consistent with the Coastal Act and represents a reasonable accommodation between the Homeowners' need to protect their property and the rights of the public.

---

[3] The Homeowners contend the Commission's finding that their seawall is located on public land is not supported by the evidence. However, at the hearing before the Commission, the Homeowners conceded their seawall was on the public beach, thus supplying substantial evidence for the Commission's finding.

The basis for the Homeowners' argument on appeal is that they somehow have obtained prescriptive rights over the disputed beach property behind their seawalls. The disputed area was technically held by the Del Mar Civic Association to which the land was given by the developer. The developer's undisputed intent in transferring the land to the Del Mar Civic Association was to provide access to the beach and that the land be held for the benefit of the public. The Del Mar Civic Association has since deeded the land to the City of Del Mar.

The general rule is that a private individual cannot gain prescriptive rights against the public. (See Civ. Code, § 1007; *City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 272 [123 Cal.Rptr. 1, 537 P.2d 1250].) Normally, the rule is applied when the state (or one of its subdivisions) is the record owner. We do not think the rule should be varied when the record owner is technically a private entity but holding the property for the public benefit.

[4] At the hearing, the Homeowners' attorney stated: "Historically, this area has not been utilized for people sunbathing, for access, later[al] or vertical access, to the beach. . . .[¶] Generally, it's a recognized fact that people do not sunbathe and utilize these areas that are at the extreme eastern edge of the beach and because of the residences and the sand berms and the riprap, et cetera, these areas have not in the past been used."

A Del Mar resident, Bill Malone, responded: "He said that in this area that they have taken over people didn't sunbathe he said because there was riprap and things like that there and people never sunbathed there. Well, yeah, nobody would sunbathe on rocks. The guys dumped rocks there. Of course, nobody sunbathed down there."

V

The Homeowners contend the Commission's finding that the seawall permit, as conditioned, is consistent with other similar permits issued by the Commission is not supported by the evidence.

The Homeowners point to the Commission's discussion of the precedential nature of the Homeowners' permit on other development and the need to establish "a clear delineation to protect the public's interest"[5] and to the Commission's statement that although "[s]ome parties may suggest that the applicants' preferred alignment represents an appropriate stringline of development, . . . this concept cannot be accepted when trying to maximize the available amount of beachfront for the public."[6] The Homeowners point to three cases (Investors Leasing, Puesta del Sol and Fredman) where the Commission has approved seawalls on more than five feet of the beach. These cases are distinguishable.

The first case, Investors Leasing, also involves property fronting the Del Mar beach. This property, however, is located north of 29th Street in an area where the private property lines extend to the mean high tide line. Thus, unlike the case here, the Investors Leasing seawall was on private not public property. Further, since the Commission conditioned approval of that seawall on the dedication of the beach forward of the seawall, public access was enhanced. The second case, Puesta del Sol, is not in Del Mar but in Carlsbad and involved approval for a permanent stone revetment. (Puesta del Sol had originally constructed the revetment under an emergency permit issued in 1983.) In Puesta del Sol it also appears that the beach was privately owned to the mean high tide line and the Commission required a dedication of land seaward of the revetment. Significantly, the Commission

---

[5] The Commission stated: "For a relatively unpopulated residential community, situated within such an urbanized region, the coastal resources of Del Mar serve as important recreational sites. Presently, there are over 90 homesites located along the beach and riverfront with over one-third of these sites having some existing, questionable encroachment onto the 'sidewalk, public sidewalk or public alley.' These encroachments include patios, fences, private stairways, landscaping (i.e., iceplant/grass berms), riprap, seawalls, sand bags and, in a few instances, the actual residence. These private encroachments have adverse and significant impacts on public access and shoreline processes as documented above. Absent a clear delineation to protect the public's interest in its resources and their right to access, each resident/owner could also attempt to place more new private structures or maintain existing encroachments adjacent to these public areas, cumulatively presenting the illusion of a private beach to the visiting public."

[6] The Commission went on to state: "The additional ten foot encroachment results in a permanent loss of over 4800 sq.ft. [of] public beach; such an approval would have unacceptable ramifications and establish an adverse precedent for other projects of both limited and significant scales. The public's rights cannot be abridged by unwarranted encroachment either singly or cumulatively."

required Puesta del Sol to relocate the revetment landward so there would be less encroachment on the sandy beach. Further, Puesta del Sol is located in Carlsbad, not Del Mar. The Homeowners have not established that the two beaches are identical as to either their natural or manmade conditions and therefore may justify different treatment. The third case, Fredman, is distinguishable because that case involved reconstruction of an existing seawall rather than a new development as is the case here.

The Homeowners also cite a fourth case, the Nollan case, involving an application for a permit to demolish an existing residence in Ventura County and to build a new and larger residence. The Homeowners state that in the Nollan case, the Commission exhaustively analyzed the competing rights of public access and private use including the impact of extending seawalls out onto property, title to which is in dispute. The Homeowners assert "[s]uch exhaustive analysis is in contrast with the generalized and conclusory findings in the subject Commission decision."

Even if we accepted the Nollan analysis as more exhaustive than the analysis here, that does not lead to the conclusion the Homeowners are entitled to the seawall as currently located. The analysis here more than amply supports the Commission's findings.

## VI

The Homeowners contend the Commission's finding the seawall permit, as conditioned, will not prejudice the ability of the City of Del Mar to develop a certified local coastal plan is not supported by the evidence.

The record shows the Homeowners were granted a number of extensions allowing them to maintain their temporary seawall in place on the basis the City of Del Mar was considering adopting a shoreline protection plan which might site seawalls where the Homeowners' seawall was located.[7] These extensions allowed the seawall to remain over two years beyond the date when the Homeowners were originally required to remove the seawall. At the time of the latest hearing, the City of Del Mar was no longer actively

---

[7]The Homeowners assert, with citations to the record, that the City of Del Mar "has expressed its preference" for the location of the Homeowners' temporary seawall. A review of the record citations does not, however, support this assertion. Rather, the record shows the location of seawalls is very controversial in Del Mar. The Del Mar City Council has considered disallowing any encroachment on the public beach by seawalls and has adopted a resolution to "vigorously resist any further or additional encroachment into the public right of way or public beach . . . ." Further, while the City of Del Mar has apparently commissioned an environmental impact report to study locating seawalls at the site of the Homeowners' temporary seawall (15 feet seaward of property lines), the environmental impact report is also studying locating seawalls at the site of the conditioned seawall (5 feet seaward).

working on a shoreline protection plan and there was no indication the City would return to the issue in the near future.

Thus, the Commission gave the Homeowners and the City of Del Mar a substantial amount of time to work out a shoreline protection plan. Under the Homeowners' argument, they should be allowed to indefinitely maintain a seawall inconsistent with the Coastal Act based solely on the speculation that someday the City of Del Mar might approve a plan siting seawalls where the Homeowners' seawall is currently located. The Commission did not abuse its discretion in rejecting the Homeowners' argument, refusing to engage in speculation and requiring the Homeowners to relocate their seawall to a site consistent with the Coastal Act.

### DISPOSITION

The judgment is affirmed.

Todd, J., and Huffman, J., concurred.