[S.F. No. 23306. In Bank. Nov. 26, 1975.]

URBAN RENEWAL AGENCY OF THE CITY OF
MONTEREY et al., Plaintiffs and Respondents, v.
CALIFORNIA COASTAL ZONE CONSERVATION
COMMISSION et al., Defendants and Appellants.

578

**COUNSEL**

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Roderick Walston and Richard C. Jacobs, Deputy Attorneys General, for Defendants and Appellants.

William C. Marsh, City Attorney, Richard C. Salladin, W. Reece Bader, Steven A. Brick and Orrick, Herrington, Rowley & Sutcliffe for Plaintiffs and Respondents.

## OPINION

**RICHARDSON, J.**—This case presents questions regarding the availability of "grandfather clause" exemptions for municipal corporations engaging in projects which otherwise would require a permit under the California Coastal Zone Conservation Act (Pub. Resources Code, § 27000 et seq.). We have concluded that municipal corporations may qualify for such an exemption since the act discloses a legislative intent to treat such entities no differently from any other "person." We further conclude, however, that although plaintiffs (city and agency) are exempt from the act's permit requirement, the exemption does not extend to building and construction activities to be undertaken by *private* developers purchasing land from plaintiffs within the project area.

### 1. *Factual Background*

Preliminarily, we review certain relevant history. Plaintiffs herein are the City of Monterey (a municipal corporation) and the Urban Renewal Agency of the City of Monterey (a public agency organized under the California Community Redevelopment Law, Health & Saf. Code, § 33000 et seq.). In 1959, plaintiffs commenced plans for the subject redevelopment project, involving 38 acres of land in the northerly section of downtown Monterey in the general vicinity of the Old Custom House and Fisherman's Wharf. The proposed plan originally contemplated replacement of existing "blighted" structures (transient hotels, bars and residences) with a shopping center, hotel, parking and tourist facilities. In February 1972, the plan was substantially modified to provide, in lieu of a shopping center, for a "cultural-conference center" which was to become the "catalyst" for a major hotel and other tourist and commercial uses on the remainder of the project lands.

From its inception, the plan called for *private* development of the buildings to be constructed within the project area. The activities of plaintiffs have been, and are, limited to the acquisition of the subject real property, the repair or demolition and removal of existing structures, and

the installation and construction of necessary public improvements such as streets, utilities and parking facilities. Thereafter, the plan provided that plaintiffs would sell various parcels to private developers for the construction of buildings compatible in type, size and use with the "basic criteria" of the redevelopment plan. According to one of the trial court's findings, "The basic criteria of said plan since inception has been and is the preservation, restoration and enhancement of historic buildings and areas and the compatibility of new structures with the City of Monterey's historical heritage, together with the renewal and development of a blighted and slum urban area."

The project was formally adopted in 1961. In 1962, plaintiff agency entered into a loan agreement with the federal government whereby the sum of $6,600,000 in federal funds would be made available to assist in the project. In 1966, the loan agreement was amended to increase the loan to $13,362,000. During the period from 1962 to November 8, 1972, (the operative date under the act's "grandfather clause") plaintiffs expended more than $11,000,000 in federal funds in furtherance of the project. Moreover, in reliance upon the federal loan and in contemplation of the proposed development project, plaintiffs prior to November 8, 1972, entered into various agreements with state and local agencies whereby lands and easements were obtained and additional funds secured. Plaintiff city paid approximately $300,000 from its general funds to acquire a parking site, and approximately $1,000,000 for various improvements to the project area. Plaintiff agency spent $3,120,000 in loan funds for the construction of a traffic tunnel and related street and utility relocation. In addition, the agency paid $20,000 on plans and designs for the cultural-conference center and hotel facility. According to the findings herein, "[a]pproximately eighty percent (80%) of the budgeted costs of the public improvements required under the . . . Plan had been expended by November 8, 1972." The findings also state that, by reason of plaintiffs' repayment obligations under the federal loan agreement, plaintiffs face irreparable injury should the project not proceed.

On March 23, 1973, plaintiffs applied to defendant regional commission for an exemption from the permit requirement of the Coastal Zone Conservation Act (hereafter sometimes referred to as Coastal Act). Although its staff recommended granting the exemption, the commission denied the application. On June 20, 1973, defendant state commission denied plaintiffs' administrative appeal. Plaintiffs thereupon filed the

present action in superior court, seeking judicial review by way of mandamus. (Code Civ. Proc., § 1094.5.) As previously indicated, the trial court found that by reason of plaintiffs' construction activities and expenditure of substantial funds in connection with the project prior to November 8, 1972, plaintiffs acquired a vested right to complete the redevelopment project without regard to the Coastal Act's permit requirement, and that this exemption extended as well to the construction and other activities of private developers in the project area. Defendant commissions appeal from the judgment.

### 2. The Coastal Zone Conservation Act

We review certain relevant provisions of the act which originated in an initiative measure, adopted at the November 7, 1972, general election. The act's stated purpose is to protect and restore the natural and scenic resources of this state's coastal areas. (Pub. Resources Code, § 27001.) It creates several regional commissions and a state commission, provides for the preparation of a coastal zone conservation plan (§ 27300), and requires certain coastal zone developers to obtain a permit from the regional commission (§ 27400). The permit requirement is contained in section 27400, which states that: "On or after February 1, 1973, any person wishing to perform any development within the permit area shall obtain a permit authorizing such development from the regional commission . . . ."

We have recently construed the language of section 27400 as requiring a coastal permit for construction commenced after February 1, 1973, but as not requiring one for persons performing "substantial lawful construction of their projects prior thereto." (*San Diego Coast Regional Com.* v. *See The Sea, Limited* (1973) 9 Cal.3d 888, 890 [109 Cal.Rptr. 377, 513 P.2d 129].) Although, as we discuss below, the *See The Sea* case may afford plaintiffs herein an alternative ground for exemption from the permit requirement of the act (since plaintiffs' pre-Feb. 1, 1973, activities were found to be deemed "substantial"), plaintiffs' primary contention relates to section 27404, the "grandfather clause" exemption.

Section 27404 in pertinent part provides: "If, prior to November 8, 1972, any city or county has issued a building permit, no *person* who has obtained a vested right thereunder shall be required to secure a permit from the regional commission; providing that no substantial changes may be made in any such development, except in accordance with the

provisions of this division. *Any such person shall be deemed to have such vested rights if,* prior to November 8, 1972, he has in good faith and in reliance upon the building permit diligently commenced construction and performed substantial work on the development and incurred substantial liabilities for work and materials necessary therefor." (Italics added.)

As we have previously indicated, the trial court found that plaintiffs had acquired vested rights under this section by reason of their pre-November 8, 1972, activities outlined above, and that accordingly *plaintiffs and the private developers who will perform the actual construction of buildings in the project area* were entitled to an exemption from the act's permit requirement. Defendants challenge the court's findings in this regard, making two separate contentions: (1) that municipal corporations cannot obtain vested property rights, and (2) that plaintiffs' redevelopment plan, and particularly that phase of it which contemplates private development, is not sufficiently defined and unified so as to constitute a single "development" entitled to a blanket exemption extending to the private developers.

Preliminarily, we note that despite section 27404's requirement of a "building permit," defendants do not contend that plaintiffs should be denied an exemption solely by reason of their failure to secure such a permit. As public agencies, plaintiffs were not required to obtain a building permit, and defendants acknowledge "that an exemption can be obtained apart from the rigid building permit requirements of section 27404 . . . ." (See also *Aries Dev. Co.* v. *California Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534, 544 [122 Cal.Rptr. 315]; *Environmental Coalition of Orange County, Inc.* v. *AVCO Community Developers, Inc.* (1974) 40 Cal.App.3d 513, 523 [115 Cal.Rptr. 59].)

*3. Availability of "Vested Rights" Exemption to Municipal Corporations*

■ Prior to the enactment of the Coastal Act, there had evolved a general principle, used primarily in zoning cases, and most recently expressed in *Aries Dev. Co.* v. *California Coastal Zone Conservation Com., supra,* 48 Cal.App.3d 534, 543, "one who in good faith reliance upon a building permit performs substantial work and incurs substantial liability in connection therewith acquires a vested right to complete construction notwithstanding an intervening change in the law that would otherwise preclude construction. [Citations.] The rule is grounded

upon the constitutional principle that property may not be taken without due process of law. [Citation.]" ■ Defendants contend that the foregoing principle is inapplicable in the matter before us because plaintiffs, being municipal corporations, are creatures of the state and subordinate to it, and accordingly may not acquire or assert vested property rights against the state. (See *Hunter v. Pittsburgh* (1907) 207 U.S. 161, 178-179 [52 L.Ed. 151, 159-160, 28 S.Ct. 40]; *Trenton v. New Jersey* (1923) 262 U.S. 182, 185-188 [67 L.Ed. 937, 940-942, 43 S.Ct. 534, 29 A.L.R. 1471]; *Williams v. Mayor* (1933) 289 U.S. 36, 40 [77 L.Ed. 1015, 1020, 53 S.Ct. 431]; *State of California v. Marin Mun. W. Dist.* (1941) 17 Cal.2d 699, 705 [111 P.2d 651].)

Were plaintiffs seeking to obtain a Coastal Act exemption solely in reliance upon the common law "vested rights" doctrine referred to above, then the foregoing rule might defeat their claim. Plaintiffs, however, are also relying upon the provisions of section 27404 which sets forth its own self-contained definition of "vested rights." As provided in that section, any person who has diligently and in good faith performed substantial work and incurred substantial liabilities "shall be deemed to have such vested rights." The section discloses no intent to incorporate the entire body of common law on the subject of vested rights. And as a general proposition, recourse to common law principles is necessary "[o]nly when the legislature has not properly defined a term . . . ." (*People v. Pociask* (1939) 14 Cal.2d 679, 683 [96 P.2d 788].)

The question remains whether the word "person" in section 27404 was intended to include municipal corporations such as plaintiffs herein, and the answer is clear: The act expressly so provides. Under section 27105, appearing in the definitional chapter, " 'Person' [when used in the act] includes any individual, organization, partnership, and corporation, including any utility and *any agency of federal, state, and local government.*" (Italics added.) The word "person" appears in several sections of the act, including section 27400 (the permit requirement), section 27404 (the grandfather clause), section 27423 (appeals), section 27424 (judicial review), section 27425 (declaratory judgment actions), section 27426 (recovery of civil penalties), section 27428 (recovery of attorneys fees), and sections 27500-27501 (liability for fines and penalties). We may reasonably assume that section 27105 was intended to furnish a uniform definition of the term "person" as used in these sections. ■ As we stated in *People v. Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 638 [268 P.2d 723], "When a statute prescribes the meaning to be given to

particular terms used by it, that meaning is generally binding on the courts."

The above expressed conclusion is not affected by the fact that the act originated from an initiative enactment. We consider it highly unlikely that the voters who approved the act at the general election were familiar with the rather esoteric constitutional principle upon which defendants rely, namely, the inability of municipal corporations to acquire vested property rights. Rather, it appears more probable that most lay persons reading the act and its definitional sections would assume that the term "person" as used in the grandfather clause as well as in other provisions included governmental agencies.

We conclude, accordingly, that municipal corporations may acquire a "vested rights" exemption under section 27404, thereby entitling them to complete their project or development without the necessity of obtaining a Coastal Act permit.

### 4. *Extent of Coastal Act Exemption*

As indicated above, the trial court found that plaintiffs had undertaken "substantial" pre-November 8, 1972, activities within the meaning of section 27404, and thereby had acquired a "vested rights" exemption permitting completion of their project. The judgment defines the scope of the exemption by mandating defendants "to grant Petitioners an exemption from the permit requirement of the . . . Act for the Custom House Redevelopment Plan as defined in Petitioners' application for exemption No. E-3-73-23, which exemption shall extend to construction and other activities of public *and private* agencies, individuals, and other entities engaged in the Project Area in connection with the Project, *including construction of private buildings in the Project Area and establishment and operation of private businesses in the Project Area in conformity with Petitioner AGENCY's Redevelopment Plan . . . ."* (Italics added.)

Defendants emphasize that under the redevelopment plan plaintiffs propose to sell various parcels of land to private developers for construction consistent with the plan, and that the types of the buildings to be constructed and the uses to be permitted therein remain undefined. Defendants suggest, accordingly, that any Coastal Act exemption available to plaintiffs should extend only to those projects which plaintiffs themselves intend to complete.

Section 27404, by its terms, limits its exemption to a "person who has obtained a vested right . . . ." The statute contains no readily observable authority for expanding the exemption of one person to afford an exemption to another person who has not himself acquired vested rights. The pertinent language suggests that the exemption extends only to those persons whose reliance upon existing permits or authorization induced them to initiate substantial performance of their projects and to incur substantial liabilities in connection therewith. As we have previously observed plaintiffs' own "project" or "development" is necessarily limited to preconstruction activities such as acquisition of real property, demolition of existing structures, and installation of site improvements. With the sale of the undeveloped parcels to various private developers, plaintiffs' active role in the redevelopment project ceases, despite the fact that plaintiffs maintain some supervising control over the type, size and uses of the buildings to be constructed.

It is possible, of course, that the private developers themselves may have acquired vested rights under section 27404. According to plaintiffs, "private owners expended approximately $1,000,000 prior to November 8, 1972, for construction of new buildings and rehabilitation of existing buildings . . . ." Yet, the nature and extent of the exemption rights of these private developers are not presently before us.

Plaintiffs note that the trial court found the redevelopment plan was an "integrated" and "interdependent" plan which cannot be segmented into separate public and private projects. Thus, the court found that "The Custom House Redevelopment Plan is both physically and economically a highly integrated, inter-related, and interdependent redevelopment project, and no single parcel or aspect of the Plan can be developed as an independently viable entity."

The trial court's findings in this regard stress primarily that the various stages of the redevelopment project are *financially* interdependent. As plaintiffs observe, the project "represents a complex economic and financial relationship in which each element is dependent upon the successful completion of a correlative element. The Cultural-Conference Center is intended to stimulate private development in the Project area. This private development will generate increased tax revenues which can be sequestered . . . and used to help finance the construction of the major parking facility necessary to accommodate visitors to the Cultural-Conference Center and the visitor oriented private development . . . . [¶]

If there is no Cultural-Conference Center the attraction for private development will be lost. If there is no private development, there will be no economic support for the Center and no funds to finance the major parking facility."

In our view, financial interdependence alone, however, is an inadequate basis on which to support the trial court's judgment herein insofar as it applies to future private development. In order to justify a blanket exemption for such prospective conduct, plaintiffs must point to substantial activities undertaken prior to November 8, 1972, in connection with a single "development." The record discloses that plaintiffs' active participation is largely completed and future private construction activities contemplated by the plan constitute development separate from the plaintiffs' in terms of design, and the esthetic and environmental considerations contemplated by the act. The fact that the private and public projects are financially interdependent in such a context does not appear controlling in the light of the clear intent of the act.

Plaintiffs and defendants for their own purposes rely upon our decision in *People* ex rel. *S.F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533 [72 Cal.Rptr. 790, 446 P.2d 790], involving a "project" commenced prior to the passage of an act regulating the filling of San Francisco Bay. The act's "grandfather clause" (Gov. Code, § 66632.1) exempted any "project" which prior to the effective date of the act, had commenced the diking and filling process pursuant to necessary local government approvals. In *Emeryville* we suggested that the term "project" was a term of limitation, requiring "a detailed and specific plan prepared in furtherance of a determination to accomplish a certain objective. A determination without a concrete plan is not a 'project' because the means of achieving the ultimate objective are not delineated sufficiently to permit prudent commencement of the enterprise. [Alternatively,] a plan without a determination is not a 'project' because the operative decision to proceed toward the objective has not been made. Only when that decision has been made and a plan has been conceived in the detail necessary for prudent commencement of physical efforts to achieve the objective does a 'project' come into being." (*Id.,* at pp. 545-546.)

We further explained in *Emeryville* that to grant an exemption "without considering the existence of a basic detailed plan would tend to reward those agencies, which act precipitously, with no specific construc-

tive expectations, intending only to evade the act and to maintain their own options to the potential detriment of unitary development of the bay area." (*Id.*, at p. 547.)

In the instant case, notwithstanding the trial court's contrary finding, it is difficult to characterize the private development phase of the redevelopment plan as a "detailed and specific plan" prepared to accomplish a "certain objective." Although plaintiffs initiated their own phase of the project long before the Coastal Act was enacted, and accordingly acted in good faith, it remains undisputed that their plan specifies neither the types nor uses of the buildings to be erected in the project area. In fact, according to defendants, the private developers who will perform the construction phase have not yet even been selected.

Under these circumstances, we conclude that the trial court erred in extending the section 27404 exemption to the private development stage of the plan.

■ The Coastal Act represents a comprehensive scheme to protect and preserve the natural and scenic resources of the coastal zone, and to insure that any development which occurs within the zone will be consistent with this overall objective. (Pub. Resources Code, § 27001.) To that end, substantial doubts regarding the meaning and effect of the exemption provision (§ 27404) should be resolved against the person seeking exemption. Furthermore, contrary to the trial court's characterization, application of the act's permit requirement to the private development phase of the instant project is neither "harsh" nor "inequitable." If, as plaintiffs maintain, the redevelopment plan is in total conformity with the act's "laudatory purposes," then the private developers chosen by plaintiffs presumably will experience little difficulty in securing the requisite permits and proceeding in an expeditious manner with the completion of the project.

### 5. The "See The Sea" Exemption

As noted above, the trial court concluded that, as an alternative ground for exemption, plaintiffs' pre-February 1, 1973, activities were substantial enough to justify application of our decision in *San Diego Coast Regional Com.* v. *See The Sea, Limited, supra,* 9 Cal.3d 888, 890. However, as our rationale in that case is limited to persons performing "substantial lawful construction of their projects" prior to February 1,

1973, and since plaintiffs' "project" does not include the private development stage, *See the Sea* is of no assistance to plaintiffs on the specific issues before us.

The judgment is reversed and the cause remanded to the trial court with directions to modify its judgment in accordance with this opinion. The parties shall bear their own costs on appeal.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.

On December 24, 1975, the opinion was modified to read as printed above.