[Civ. No. 37893. First Dist., Div. One. Oct. 27, 1976.]

OCEANIC CALIFORNIA, INC., Plaintiff and Appellant, v.
NORTH CENTRAL COAST REGIONAL COMMISSION et al.,
Defendants and Appellants;
NATURAL RESOURCES DEFENSE COUNCIL, INC., et al.,
Interveners and Respondents.

58

## Counsel

Ellman & Passovoy, Ellman, Passovoy & Burke, Howard N. Ellman, Susan J. Passovoy, Stephen K. Cassidy and Brobeck, Phleger & Harrison for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Roderick Walston and William M. Chamberlain, Deputy Attorneys General, for Defendants and Appellants.

John Roger Beers and Ballard Jamieson for Interveners and Respondents.

**OPINION**

**SIMS, Acting P. J.**—Appellant, a land developer, has appealed from a judgment that denied its petition for a writ of administrative mandamus in which it sought, among other relief, a judgment that it was entitled to an exemption from the provisions of the California Coastal Zone Conservation Act of 1972 (Pub. Resources Code, § 27000 et seq.) to the full extent requested in its application (see Cal. Admin. Code, tit. 14, §§ 13700-13707; and *State of California* v. *Superior Court (Veta Co.)* (1974) 12 Cal.3d 237, 249-250 [115 Cal.Rptr. 497, 524 P.2d 1281]) that had been denied by each of respondent commissions. The respondent commissions have filed a cross-appeal in which they seek review of rulings of the court with respect to the admission of evidence and settlement of the findings.

Petitioner concedes that it has not secured a building permit, as required by the provisions of section 27404 of the Public Resources Code.[1] It contends that under the particular circumstances of this case, a sequence of approvals and actions taken pursuant to a planned unit development zoning approval, it acquired a vested right to complete the development; and that, therefore, section 27404 should be construed in a manner which would recognize the developer's vested right, or it should be disregarded on the grounds that it is not the exclusive statutory measure of rights under the Coastal Act, or it should be voided on the

[1]Section 27404 provides: "If, prior to November 8, 1972, any city or county has issued a building permit, no person who has obtained a vested right thereunder shall be required to secure a permit from the regional commission; providing that no substantial changes may be made in any such development, except in accordance with the provisions of this division. Any such person shall be deemed to have such vested rights if, prior to November 8, 1972, he has in good faith and in reliance upon the building permit diligently commenced construction and performed substantial work on the development and incurred substantial liabilities for work and materials necessary therefor. Expenses incurred in obtaining the enactment of an ordinance in relation to the particular development or the issuance of a permit shall not be deemed liabilities for work or material."

grounds it is unconstitutional as applied to this development. As is noted below the principle predicates upon which the developer's contentions must rest have been advanced and refuted in the recent decision in *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546]. There are some factual differences in the two cases, and further arguments have been advanced in this case. Nevertheless, we do not find them controlling. The judgment must be affirmed.

The affirmance of the judgment renders it unnecessary to consider the commissions' protective appeal. We, therefore, do not determine the delicate question of whether the determination of whether a vested interest exists, as distinguished from the question of the rights appertaining to such an interest, requires the exercise of independent judgment by a court reviewing an administrative decision, or merely a determination that there is substantial evidence in the light of the whole record to sustain the administrative finding. (Code Civ. Proc., § 1094.5, subd. (c). Cf. *Mobil Oil Corp.* v. *Superior Court* [Air Pollution Control District of San Diego County] (1976) 59 Cal.App.3d 293, 304-305 [130 Cal.Rptr. 814] [hg. den. Sept. 8, 1976], with *Transcentury Properties, Inc.* v. *State of California* (1974) 41 Cal.App.3d 835, 844 [116 Cal.Rptr. 487]; and note *Avco Community Developers, Inc.* v. *South Coast Regional Com.*, *supra*, 17 Cal.3d at p. 796, fn. 7; and *Aries Dev. Co.* v. *California Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534, 545 [122 Cal.Rptr. 315].) Nor do we determine whether the trial court erred in receiving testimony which was not presented to the commissions. (See § 1094.5, subd. (d).) As noted below, the conclusions of law and the judgment of the trial court are consistent with or control the adverse findings attacked by the commissions. The affirmance also renders it unnecessary to consider whether or not the developer in fact complied with the zoning ordinance, or, if not, whether the "P-C District" zoning may be attacked at this late date.

The findings furnish the following general outline of the facts. The developer "Oceanic" purchased approximately 5,200 acres on the northern Sonoma County coast in 1963 "to develop the property as an integrated whole under a planned community concept, offering for sale to the public a choice of condominium units, residential cluster development constructed by Oceanic or by third parties, and subdivided lots which Oceanic would prepare for construction of single-family

dwellings by the purchasers under a restrictive and particularized plan of architectural control."

In 1964 the developer applied for planned community zoning for the southerly 1,800 acres and prepared and presented to county authorities analyses of soil conditions, of patterns of vegetation, of wind, of weather and of precipitation, a program of forest management, and a series of development constraints embodied in "The Sea Ranch Restrictions," requiring all man-made improvements to preserve the environmental considerations. These studies, analyses and exhibits in many cases pertained to and affected the entire 5,200 acres and were not in every case restricted to the 1,800 acres involved in the application. The county planning commission and the board of supervisors approved the planned community zoning for the 1,800 acres with knowledge that the developer intended to develop the entire 5,200 acres in accordance with the concept as approved.

Thereafter, the developer commenced actual development on an incremental basis, applying to the county for subdivision map approval for single family residential lot developments, and for use permit approvals for condominiums and other types of developments.

In 1968 the developer applied for "P C" zoning for the remaining 3,400 acres of its holdings, and its application was approved by the planning commission and board of supervisors. In 1969 after negotiations and hearings the developer secured a resolution of the board of supervisors that it would accept a dedication of 120 acres of parkland at the northerly end of The Sea Ranch for use as a county regional park in lieu of further access corridors through The Sea Ranch, unless the developer submitted changes to plans already approved.

In 1971 legislation was adopted which required that there be a specific plan covering the area to be included within any land project for which a subdivision map was to be approved, and requiring that any tentative or final subdivision map and the provisions for its design and improvement be consistent with existing applicable general and specific plans. (Stats. 1971, ch. 1446, §§ 4 and 7, pp. 2853 and 2855, adding §§ 11526.1 and 11549.5 to the Bus. & Prof. Code. See present Gov. Code, §§ 66474.5 and 66474.) Thereafter the developer paid the fees and costs of an indepen-

dent consultant who prepared such general and specific plans under the direction of the county authorities, and such plans were adopted in 1972.

During the eight-year period prior to the adoption of the coastal initiative on November 7, 1972, the county issued various developmental approvals regarding The Sea Ranch, including not only the zoning approvals in 1964 and 1968 and the specific plan adopted in 1972, but also numerous subdivision map approvals for particular subdivision increments, use permit approvals for condominiums, sewage treatment plants and other projects, grading permit approvals where necessary to carry out development plans, and building permit approvals for structures. The developer performed substantial work and it incurred substantial expenditures in developing its land. In that respect the trial court found that over 2,000 subdivided lots have been created of which approximately 1,500 have been sold to the public. Approximately 350 single family residences and 14 condominium units have been constructed. The developer has also constructed a lodge, store facility, various recreational facilities, and other improvements of various kinds and character. It has secured a permit to appropriate water from an adjacent river to accommodate a projected over-all build out of 5,200 units. It has obtained use permits to construct three waste water treatment plants and has undertaken construction of two of the plants. It has arranged for utility services to serve the units of the development as they have been developed. The developer had expended, prior to November 8, 1972, $26,900,000 in direct project expenditures in connection with The Sea Ranch of which $9,250,000 represented hard development costs, exclusive of engineering, architectural drawings and planning.

The property involved in the developer's application for exemption which was filed with the regional commission on May 14, 1974, varies from unsubdivided portions of The Sea Ranch designed on the specific plan map as "P C Map Use, Subject to Future Detailed Planning," to a condominium unit for which tentative map and use permits had been obtained but had expired before final approval or construction had occurred. These categories are reviewed below.

On July 11, 1974, the regional commission denied the developer's application in its entirety, and on August 14, 1974, the state commission rejected the developer's appeal. This action ensued. Other findings bearing on appellant's contentions are discussed below.

I

■ The trial court generally concluded, "The State of California has constitutional power to impose the permit provisions of the Coastal Zone Conservation Act upon all developers who do not meet the vested rights standard in Section 27404 of the Public Resources Code." More particularly it stated: "Although the County of Sonoma repeatedly approved the concept of a planned community development for The Sea Ranch, beginning with the 1964 zoning approval, continuing with the 1968 zoning approval, and continuing again in 1972 with Specific Plan approval, this type of general approval is not a sufficient governmental approval on which to base a claim of vested rights to develop notwithstanding the Coastal Act. Reliance upon such approval, though reasonable, does not create such a vested right. Therefore, Oceanic did not obtain vested rights to develop notwithstanding the Coastal Act as a result of either of the rezoning approvals or the Specific Plan approval;" and [¶] "The adoption of The Sea Ranch Specific Plan is not the equivalent of a building permit or other necessary final approval required in order to obtain vested rights under the Coastal Act, pursuant to Public Resources Code Section 27404."

The developer's attack on the foregoing findings is predicated on several postulates which may be summarized as follows: First, the provisions of section 27404, which recognize an exemption from the requirement of securing a permit from the regional commission for a development if the developer had secured a building permit prior to November 8, 1972, and prior thereto had in good faith and in reliance upon the building permit diligently commenced construction and performed substantial work on the development and incurred substantial liabilities for work and materials necessary therefor, do not provide the exclusive measure of whether a developer has acquired a vested right to proceed with a development which is otherwise approved; Second, a vested right to proceed should be recognized where there is a concrete specific plan approved by governmental authority and a determination to proceed manifested by both such approval and substantial actual development in conformance with the approved plan; and Third, a recognition that planned unit development is an essential tool for achieving modern planning goals and that establishment of the vested right of the developer under such plans is proper and essential for the proper functioning of that process.

# A

In *Urban Renewal Agency* v. *California Coastal Zone Conservation Com.* (1975) 15 Cal.3d 577 [125 Cal.Rptr. 485, 542 P.2d 645], the court was reviewing a judgment which overruled the regional and state commissions and authorized the urban renewal agency, a public entity, to complete all phases of the urban renewal plan. Since the agency as a public body was not required to secure a building permit, the commissions acknowledged " 'that an exemption can be obtained apart from the rigid building permit requirements of section 27404 . . . .' " (15 Cal.3d at p. 583.) The court found that the agency was a person entitled to the benefits of section 27404, and noted, "The section discloses no intent to incorporate the entire body of common law on the subject of vested rights." (*Id.,* at p. 584.)

Similarly, in *Aries Dev. Co.* v. *California Coastal Zone Conservation Com., supra,* 48 Cal.App.3d 534, the court noted, "Although the cases speak of vested rights in terms of reliance upon a *building permit* [citations], the Attorney General, both in the court below and in his opening brief on appeal, has argued the case on the assumption that a building permit may no longer be a *sine qua non* of a vested right. He points out that under modern land development practices various governmental approvals are required before the issuance of a building permit, each approval pertaining to different aspects of the project, and suggests that a vested right might arise before the issuance of a building permit if the preliminary permits approve a specific project and contain all final discretionary approvals required for completion of the project." (48 Cal.App.3d at p. 544, fn. omitted.)

In *Environmental Coalition of Orange County, Inc.* v. *AVCO Community Developers, Inc.* (1974) 40 Cal.App.3d 513 [115 Cal.Rptr. 59], it was recognized that there was no sound reasoning for differentiating between "development" pursuant to a building permit, and "development" pursuant to a grading permit insofar as acquiring a vested right to complete the authorized work following substantial performance was concerned. (40 Cal.App.3d at p. 523.)

In *Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* the court noted another concession by the commissions. The opinion states, "With commendable candor, the commission concedes

that it does not deem a building permit to be an absolute requirement under all circumstances for acquisition of a vested right. It suggests that in rare situations the government may grant another type of permit, such as a conditional use permit, which affords substantially the same specificity and definition to a project as a building permit, and that in such instances a builder might acquire a vested right even though the document was not designated a 'building permit.' " (17 Cal.3d at pp. 793-794.) So in this case the findings reflect that with respect to one unit of cluster development for which the developer had secured approval for specific structures at the time of subdivision approval, an exemption had been granted in earlier proceedings.

It may be assumed that literal adherence to the issuance of a "building permit" is not the *sine qua non* of the establishment of a vested right to complete one of the forms of development contemplated by the act. (See § 27103.) It is not important to determine whether that result is obtained by so construing section 27404, or by recognizing that there is a parallel common law vested rights doctrine. In either case the scope of the development which the developer has the right to complete without a coastal permit is limited by the scope of the specific development theretofore approved and permitted, and depends upon the good faith performance of substantial work and incurring of liabilities for the development so expressly authorized. The cases upon which the developer relies make this clear, and fail to support his general claim to erect structures and make improvements other than as expressly authorized prior to the adoption of the Coastal Act.

In the *Urban Renewal Agency* case the court reversed the trial court insofar as it permitted development other than that to be carried out by the applicant for exemption. (See 15 Cal.3d at pp. 585-588.) The court also laid down the following general principles which are applicable in this case: "The Coastal Act represents a comprehensive scheme to protect and preserve the natural and scenic resources of the coastal zone, and to insure that any development which occurs within the zone will be consistent with this overall objective. (Pub. Resources Code, § 27001.) To that end, substantial doubts regarding the meaning and effect of the exemption provision (§ 27404) should be resolved against the person seeking exemption. Furthermore, contrary to the trial court's characterization, application of the act's permit requirement to the private development phase of the instant project is neither 'harsh' nor 'inequita-

ble.' If, as plaintiffs maintain, the redevelopment plan is in total conformity with the act's 'laudatory purposes,' then the private developers chosen by plaintiffs presumably will experience little difficulty in securing the requisite permits and proceeding in an expeditious manner with the completion of the project." (*Id.*, p. 588.)

In the *Aries* case, the court applied a test of whether the developer had received all necessary discretionary approvals prior to November 8, 1972, and found that the trial court erred in finding that it had. (See 48 Cal.App.3d at pp. 544-547.) As noted in the recent *Avco* case, that rule was applied only because the trial had been held on that theory. (See 17 Cal.3d at p. 795, fn. 6.)

In the earlier *Avco* case the court was careful to point out that although a vested right could be acquired by performing work under a grading permit it was limited to the completion of that work. The court stated, "We make no determination respecting defendant's contention governmental approval of its subdivision and parcel maps, including itemized 'developments' in connection therewith, under the decision in *See The Sea* [*San Diego Coast Regional Com.* v. *See The Sea, Ltd.* (1973) 9 Cal.3d 888 (109 Cal.Rptr. 377, 513 P.2d 129)] or the common law doctrine of vested rights, authorizes construction of its 'projects' in toto without a coastal permit. The 'development' included in a building or grading permit is adequately defined by the terms of the permit, its nature and the law requiring such, justifying the conclusion work performed pursuant thereto is not subject to subsequent permit requirements. However, the 'development' included in the approval of subdivision or parcel maps may not be sufficiently definitive to justify the conclusion work performed pursuant thereto was part of a 'construction' or 'project' encompassing more than the preparation of land for subdivision purposes in conformity with the approved maps." (40 Cal.App.3d at pp. 524-525.)

Finally, in the recent *Avco* case the court stated, "Even if we assume arguendo that a building permit is not required in order to acquire a vested right to construct particular buildings in every case, Avco cannot prevail. As we have seen, although the trial court found that Avco had a detailed plan for the buildings to be erected on the tract, the county was not aware of and had not approved such a plan, and the preliminary approvals which it did grant did not refer to any identifiable buildings." (17 Cal.3d at p. 797.)

## B

The third contention may be disposed of summarily. In *AVCO Community Developers, Inc.* v. *South Coast Regional Com., supra,* the developer's position, with exceptions noted below, was similar to that advanced in this case. The court noted, "Here Avco asserts that it had a vested right to construct buildings on tract 7479 without permission from the commission because prior to February 1, 1973, when the coastal permit requirement took effect, it spent large sums of money to construct subdivision improvements and grade the tract, in reliance on several county authorizations, and that these improvements were undertaken and approvals issued for the purpose of constructing buildings. Thus, Avco relies upon the doctrine of vested rights as defined in the common law and in the Act itself." (17 Cal.3d at p. 791.) The opinion observed, "Evaluation of this claim requires a determination of the point in the development process at which a landowner can be said to have acquired a vested right to construct buildings on his land. The commission contends, subject to an exception to be discussed *infra,* that a builder may not acquire a vested right prior to the issuance of a building permit, whereas Avco asserts that in the context of a subdivision a developer's right to construct buildings vests when it has subdivided the land and installed subdivision improvements such as roads and utilities pursuant to governmental authorization. Amicus curiae appearing on behalf of Avco (*Oceanic California, Inc.* and Half Moon Bay Properties, Inc.) argue for an even earlier time of vesting in the case of a planned unit development, i.e., when such zoning is imposed on the developer's land." (*Id.,* italics added.)

After reviewing and approving existing precedents, the court concluded as follows: "Nor are we convinced by the importuning of amicus curiae that we should make an exception to the accepted rules set forth above because tract 7479 is part of a planned community development. Amicus suggests that a builder acquires a vested right to construct buildings at the time the government approves a planned unit development for the property. Planned unit development allows the construction of buildings on a tract free of conventional zoning so as to permit a cluster of structures, with increased density, on some portions of a tract, leaving the remainder as open space. (*Orinda Homeowners Committee* v. *Board of Supervisors* (1970) 11 Cal.App.3d 768, 772 . . .) It is asserted that planned unit development serves the public interest because it provides

an excellent means for implementing sound planning and preserving the environment, that a builder's preliminary investment in such a development far exceeds the investment required for a conventional subdivision, and that unless a landowner is assured that he can proceed with such a development in the manner initially approved by the government, he will not have the incentive to participate in a project of that type.

"We have no reason to question the merits of planned unit development. However, the approval of such a plan merely imposes a special zoning on the property. It is beyond question that a landowner has no vested right in existing or anticipated zoning. (*HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 516 . . .; *Morse* v. *County of San Luis Obispo* (1967) 247 Cal.App.2d 600, 602 . . .; *Anderson* v. *City Council, supra,* 229 Cal.App.2d 79, 88-90.) We are aware of no authority compelling us to carve out an exception to this rule for planned unit zoning since the rule governs zoning of all other types. If there is to be a departure from settled rules for zoning of this character it must be provided by the Legislature." (*Id.,* p. 796.)

 We, therefore, reject the developer's suggestion that it acquired any vested rights to conduct further development by reason of the planned community zoning or the general or specific plans adopted by the county.

## C

Since the developer cannot establish existence of the criteria necessary to establish a vested right and an exemption under section 27404, it must rely upon common law constitutional principles. In the recent *Avco* case the court stated, "It has long been the rule in this state and in other jurisdictions that if a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit. (*Dobbins* v. *City of Los Angeles* (1904) 195 U.S. 223 . . .; *Trans-Oceanic Oil Corp.* v. *Santa Barbara* (1948) 85 Cal.App.2d 776, 784 . . .)" (17 Cal.3d at p. 791. See also *Urban Renewal Agency* v. *California Coastal Zone Com., supra,* 15 Cal.3d 577, 583-584; *Sierra Club* v. *California Coastal Zone Conservation Com.* (1976) 58 Cal.App.3d 149, 156-157 [129 Cal.Rptr. 743] [hg. den. July 6, 1976]; and *Aries Dev. Co.* v. *California Coastal Zone Conservation Com., supra,*

48 Cal.App.3d 534, 543.) The opinion continues with an analysis of *Spindler Realty Corp.* v. *Monning* (1966) 243 Cal.App.2d 255 [53 Cal.Rptr. 7] and *Anderson* v. *City Council* (1964) 229 Cal.App.2d 79 [40 Cal.Rptr. 41]. After rejecting distinctions advanced by the developer, which are similar to those made by appellant in this case, the court concluded: "Despite minor factual variations *Spindler* and *Anderson* are clearly controlling; they stand for the proposition that neither the existence of a particular zoning nor work undertaken pursuant to governmental approvals preparatory to construction of buildings can form the basis of a vested right to build a structure which does not comply with the laws applicable at the time a building permit is issued. By zoning the property or issuing approvals for work preliminary to construction the government makes no representation to a landowner that he will be exempt from the zoning laws in effect at the subsequent time he applies for a building permit or that he may construct particular structures on the property, and thus the government cannot be estopped to enforce the laws in effect when the permit is issued." (17 Cal.3d at p. 793. See also *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 518 [125 Cal.Rptr. 365, 542 P.2d 237] [cert. den. 96 S.Ct. 1495]; *Patterson* v. *Central Coast etc. Conservation Com.* (1976) 58 Cal.App.3d 833, 843-845 [130 Cal.Rptr. 169]; *Davis* v. *California Coastal Zone Conservation Com.* (1976) 57 Cal.App.3d 700, 708 [129 Cal.Rptr. 417]; and *Morse* v. *County of San Luis Obispo* (1967) 247 Cal.App.2d 600, 602 [55 Cal.Rptr. 710].)

The developer, however, insists that the courts should apply a test which would recognize a vested right when the issuance of the remaining permits is only ministerial and "all final discretionary approvals required for completion of the project" have been obtained. (See *Aries Dev. Co.* v. *California Coastal Zone Conservation Com., supra,* 48 Cal.App.3d 534, 544.) In *Avco* the court apparently rejected that test by noting that the reference to that criterion in *Aries* was adopted because the case had been tried below, and briefed on appeal on that theory. (17 Cal.3d at p. 795, fn. 6.) As pointed out in *Avco,* since a building permit generally cannot be issued unless the structure complies with law, such a provision in a building code "codifies the general rule that a builder must comply with the laws which are in effect at the time a building permit is issued, including the laws which were enacted after application for the permit. [Citations.] A landowner which has not even applied for a permit cannot be in a better position merely because it had previously received permission to subdivide its property and made certain improvements on

the land." (*Id.,* p. 795, fn. omitted.) ■ A permit under the Coastal Act is required for the issuance of a building permit applied for after the effective date of that act, in the absence of an exemption.

The developer also advances a concept, not specifically addressed in *Avco,* that the "development" to be exempted from the provisions of the Coastal Act should be equated with the "project" discussed in *People* ex rel. *S. F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533 [72 Cal.Rptr. 790, 446 P.2d 790]. That case did not involve a vested right but merely a "grandfather clause" (Gov. Code, § 66632.1) which exempted certain projects which had already been commenced under specific permits. (See 69 Cal.2d at p. 536, fn. 1; and *Aries Dev. Co.* v. *California Coastal Zone Conservation Com., supra,* 48 Cal.App.3d 534, 547.) In *Emeryville* the court suggested that in the light of the purpose of the legislation creating the San Francisco Bay Conservation and Development Commission, and the fact that the word "project" was contained in an exception to the regulatory powers adopted to carry out the objectives of that legislation, it should be construed as a term of limitation. It defined "project" as requiring "a detailed and specific plan prepared in furtherance of a determination to accomplish a certain objective. A determination without a concrete plan is not a 'project' because the means of achieving the ultimate objective are not delineated sufficiently to permit prudent commencement of the enterprise. A plan without a determination is not a 'project' because the operative decision to proceed toward the objective has not been made. Only when that decision has been made and a plan has been conceived in the detail necessary for prudent commencement of physical efforts to achieve the objective does a 'project' come into being." (69 Cal.2d at pp. 545-546.) Although that definition was recognized in *Urban Renewal Agency* v. *California Coastal Zone Com., supra,* because it had been referred to by both parties (15 Cal.3d at p. 587), the court found that the development sought by the agency in fact was limited in scope, and ordered the trial court to modify its judgment accordingly. There is no solace for appellant in that decision. Here the developer, unlike the agency, was subject to the requirement of further permits and approvals before structures could be erected on his land. ■ As noted below, the *Urban Renewal Agency* case disposes of the developer's contention that the existence of building restrictions, and interrelationship and interdependence of the unit developments gives it a vested interest to construct the entire contemplat-

ed project. The quotation set forth in part A above is a clear indication that the *Emeryville* definition of "project" cannot be used to vary either the statutory or common law concept of vested interest.

In an earlier *AVCO* case (*Environmental Coalition of Orange County, Inc.* v. *AVCO Community Developers, Inc., supra,* 40 Cal.App.3d 513) the court modified a preliminary injunction to permit the completion of grading which had been commenced prior to the effective date of the act under permits previously issued. We note that there the court stated, "On the other hand we have concluded whether defendant's 'development' of its property without a coastal permit extends to completion of its projects in toto, i.e., for the uses authorized by the planned community regulations allegedly adopted by the County of Orange, is a question which should be determined by a trial on the merits, and to the extent the preliminary injunction enjoins this latter 'development' granting such was not an abuse of discretion." (40 Cal.App.3d at p. 523.) In view of the later *Avco* case it is clear that the mere existence of planned community regulations does not give a vested right to proceed with construction of contemplated structures without a permit from the coastal commission.

In *Sierra Club* v. *California Coastal Zone Conservation Com., supra,* the court ruled, on the basis of the earlier *AVCO* case, "Whether the buildings within the development which were authorized by the building permit, but upon which no actual construction had commenced, were so interdependent with those buildings within the development which were under construction by February 1, 1973, that the actual construction was sufficient to also exempt the authorized but as yet unconstructed buildings, is initially a question of fact." (58 Cal.App.3d at p. 157.) The question there, however, was not whether the developer had a vested right to proceed without a building permit, but whether the building permit which had been issued was severable. It should be noted that the court approved the action of the state commission which denied the exemption as to other portions of the project which had been deemed exempt as part of a total project by the regional commission (*id.,* and see p. 153).

We find no precedent for the broad concept of development urged by the developer.[2]

## II

We turn to the specific categories of property involved in this case.

### A

The developer states that the criteria for completion of The Sea Ranch are sufficiently articulated in the specific plan, the prior approvals, and the developmental history to the time of the effective date of the Coastal Act, as to entitle it to declaration that it has a vested right to complete all of the project exempt from the permit provisions of the Coastal Act.[3] This contention was completely answered by the Supreme Court in the *Avco* case. The general conclusions of the trial court which have been quoted above must be sustained.

### B

■ The developer contends that it is entitled to an exemption, at least to complete development work and file final maps for three units for which tentative maps were approved prior to November 8, 1972.

The court found, "Tentative map and use permit approvals were obtained for Unit 8 in September of 1972, but no construction occurred pursuant thereto, and in accordance with applicable Sonoma County ordinance, these approvals expired in February, 1974." The court

[2]On September 15, 1976, the Supreme Court denied a hearing, but directed the Reporter of Decisions not to publish the decision in *Get Oil Out! Inc.* v. *California Coastal Zone Conservation Com.* (1 Civ. 37167). There the court had indicated, "It is evident that governmental authorization could be obtained for an integrated project consisting of several units which would individually constitute 'developments' within the meaning of section 27103, and that such project could be considered a 'development' in which the owner might have a vested right to complete in its entirety under section 27404. In fact, such was the construction placed under section 27404 in both the *AVCO* and *Sierra Club* cases, *supra.*" As we have seen, neither the earlier *AVCO* case nor the *Sierra Club* case warrants such a broad generalization.

[3]The developer suggests it is entitled to a declaration that the bulk of its undeveloped lands, which lie outside of the permit area, does not fall within the jurisdiction of the commissions under the Coastal Act of 1972. Since we are reviewing the action of the commissions, and they have not purported to exercise jurisdiction over those lands, such a declaration would be inappropriate in these proceedings.

concluded, "With respect to Unit No. 8, the fact that tentative map approval occurred in September of 1972 does not by itself establish vested rights. The Commission was correct in concluding that no vested right was obtained by Oceanic for Unit No. 8 since Oceanic did not obtain building permit approvals and did not perform any construction in reliance thereon. Furthermore, since the approvals obtained in September of 1972 have since expired, any possible vested rights obtained by Oceanic have lapsed or been abandoned."

The court found, "In the following subdivision units, some development approvals had been obtained by November 8, 1972, but the subdivision approval and improvement process was not completed as of that date: Unit 34A, Unit 34B, Unit 35A, Unit 35B, Unit 35C and Unit 35D." It also found, "In June of 1973, pursuant to application by Oceanic, the North Central Coastal Commission granted a claim of exemption for the act of subdividing and developing off-site improvements in Units 35A, 35B and 35C. Construction of dwellings on the lots created in these Units was not determined by the Commission to be exempt"; and "With respect to Units 34B and 35D, tentative map approval was obtained in March of 1972, but no final map approval was ever obtained and in accordance with Sonoma County ordinance, the tentative map approval expired in late 1973." The court concluded: "With respect to Units 34B and 35D, Oceanic had approval of a tentative subdivision map prior to November 8, 1972, but that does not create vested rights since no final map approval was ever obtained and no substantial reliance upon tentative map approval has been shown. With respect to Unit 34A, since Oceanic had not obtained a final map approval or other final governmental approvals prior to November 8, 1972, Oceanic does not qualify for vested rights with respect to Unit 34A under Section 27404 of the Coastal Act."

The developer apparently contends that the passage of the Coastal Act tolled its right to proceed under the tentative maps, and that the court erred in finding that the expiration of the period in which to file a final map furnishes a ground for failure to recognize a vested right. That argument is of no avail. The failure to acquire a vested right under the preexisting permit is predicated on the failure of the developer to commence performance and perform substantial work toward the prerequisites for filing a final map, as required by section 27404 and the common law. The approval inherent in the tentative maps lapsed

because of the developer's failure to secure extensions of time from the county authorities to perform the requisites for a final map. The time for performance had passed when the exemption application was filed in March 1974. What the county might do under the circumstances cannot be determined in these proceedings. The commission and the trial court properly denied an exemption to do work toward recording a final map. Nothing in these proceedings precluded the developer from securing an extension of time from the county authorities or from them requesting a permit from the regional commission to proceed with the subdivisions' final approval.

C

■ The subdivider also claims a right to proceed with construction on areas on final maps which have been approved for the construction, subject to the issuance of a use permit, of condominiums and multihousing or cluster developments. The court found that one of the latter units, 29A, had been exempted previously because the structural features had been approved and· work had commenced. There is nothing in the findings which would indicate that any other property in which such type of development was contemplated was the subject of any approval of any nature.

With respect to condominiums the court found: "With the exception of Unit No. 8, a large proposed condominium development, and Units 2 and 11A, small condominium developments which were completed prior to the Coastal Act, neither Oceanic nor any other developer of condominiums had obtained any tentative map, use permit, building permit, grading permit, or precise development plan approval for condominiums at The Sea Ranch prior to the adoption of the Coastal Act." The court concluded: "The weight of the evidence supports the Commission's determination that Oceanic did not perfect vested rights to complete any condominium units because on November 8, 1972, Oceanic had not obtained a building permit as required under Public Resources Code Section 27404 for any condominium project at The Sea Ranch with the exception of Unit No. 8 (and with the exception of two

projects either completed or declared exempt from the Coastal Act during 1973, which said projects are not at issue herein)."

The thrust of the developer's attack is that the existing plans and approvals set a pattern which rendered the approval of the necessary subdivision maps, use permits, precise plans, grading permits and building permits mere ministerial acts in applying standards already established and agreed upon. It is obvious that this contention cannot be sustained in the light of the law that has developed under the Coastal Act. The findings and conclusions of the trial court must be sustained.

## D

Finally, it is asserted that the developer has a right to construct single family residences on all lots shown for that purpose on approved and filed maps. The court found, "With respect to the development of single family residential lots, Oceanic's development plans, as expressed to the County of Sonoma and to the Department of Real Estate, have been that Oceanic would subdivide lots and provide off-site improvements such as roads and utilities, but the design and construction of single family dwellings would be undertaken, in most cases, by the individual lot purchaser or his contractor and architect subject to the terms of The Sea Ranch Restrictions and the other applicable development constraints."

An additional finding reads, "Oceanic has no building permits for construction of single family dwellings on developed lots which it owned on the effective date of the Coastal Act. Once Sea Ranch lots designed for single family dwellings have been subdivided and off-site improvements constructed, the lot purchaser, or Oceanic, still must obtain building permits and septic tank or sewer permits in order to construct a single family dwelling upon any lot. Under certain circumstances, permits for site grading might also be required. The Sea Ranch Restrictions, read together with the subdivision maps and the Sonoma County ordinances, create structural constraint sufficiently specific in nature that the issuance of a building permit would be more in the

nature of a ministerial act rather than a discretionary act on the part of the County."[4]

The court concluded: "In light of the architectural controls and other requirements imposed upon Sea Ranch lot owners by The Sea Ranch Restrictions, and by the necessity of obtaining Sea Ranch Design Committee review and approval of any proposed construction, the issuance of a building permit for a single family dwelling by the County of Sonoma is more in the nature of a ministerial act rather than a discretionary act on the part of the County."

It, nevertheless, also concluded: "The weight of the evidence supports the Commissions' conclusion that Oceanic had not perfected vested rights under Public Resources Code Section 27404 for the construction of single family dwellings upon lots created by the subdivision process at The Sea Ranch because Oceanic had not obtained building permits for such houses prior to November 8, 1972."

The developer argues that in view of the fact that the issuance of a building permit is merely a ministerial act it should be adjudged to have a vested right to proceed with construction of single family homes exempt from the provisions of the Coastal Act. In *Avco* the Supreme Court was faced with a similar contention by the developer based upon the existence of a model. The court noted, however, "The model was prepared by Avco for its own use and was not submitted to the county." (17 Cal.3d at p. 794.) A footnote reflects, "Avco submitted photographs of the model, which was prepared in 1971, to the commission. It claims that the model is a 'product and synthesis' of the information supplied to the county, but there is nothing in the record to indicate that Avco had

[4]The findings reflect that "The Sea Ranch Restrictions" are a recorded declaration of covenants, conditions and restrictions, which create a Design Review Committee for architectural control, and prescribe "the buildable area of a lot and limit the materials, color and style of the home sufficient to create an individual but uniform pattern throughout The Sea Ranch." Approval of each subdivision unit has been conditioned upon subjecting the property to the restrictions. The restrictions are specific and are for the benefit of every lot owner at The Sea Ranch. They have been administered and enforced in accordance with their terms. They set forth certain specific overall architectural guidelines for single family dwellings, and control is administered by the Design Review Committee, whose decisions, although not binding upon the county, have received the cooperation of the county in the issuance and denial of building permits. The court concluded, "The Sea Ranch Restrictions are for the benefit of every lot at The Sea Ranch subject thereto, and the owner of each lot may require that The Restrictions be enforced in accordance with their terms."

supplied the county with detailed information concerning the buildings it intended to construct on the tract." (*Id.,* fn. 3.) Here, on the other hand, it may be contended that the findings require a contrary result.

We have seen, however, that the Supreme Court propounded the doctrine that if the law required a Coastal Act permit at the time the building permit was applied for, no building permit could issue (17 Cal.3d at p. 795). Moreover, no matter how rigid The Sea Ranch restriction may be, they are no more than "supervising control over the type, size and use of the buildings to be constructed." (See *Urban Renewal Agency* v. *California Coastal Zone Conservation Com., supra,* 15 Cal.3d at p. 586.) The case last cited indicates that provisions for such a control do not give the developer a vested right to construct the structures so controlled (*id.*). It also infers that any Coastal Act exemption available to the developer should extend only to those projects which the developer itself intends to complete (*id.,* pp. 585-586). Here the court found that the developer had not proposed to undertake the construction of single family dwellings.[5]

*Urban Renewal Agency* also lays to rest the contention that construction on the undeveloped portions should be exempted and authorized because of expenditures incurred for the benefit of the entire 5,200 acres. Although the trial court found that the various stages of the redevelopment project were financially interdependent the court concluded: "In our view, financial interdependence alone, however, is an inadequate basis on which to support the trial court's judgment herein insofar as it applies to future private development. In order to justify a blanket exemption for such prospective conduct, plaintiffs must point to substantial activities undertaken prior to November 8, 1972, in connection with a single 'development.' The record discloses that plaintiffs' active participation is largely completed and future private construction activities contemplated by the plan constitute development separate from the plaintiffs' in terms of design, and the esthetic and environmental considerations contemplated by the act. The fact that the private and public projects are financially interdependent in such a context does not

[5]The court found: "With respect to the development of single family residential lots, Oceanic's development plans, as expressed to the County of Sonoma and to the Department of Real Estate, have been that Oceanic would subdivide lots and provide off-site improvements such as roads and utilities, but the design and construction of single family dwellings would be undertaken, in most cases, by the individual lot purchaser or his contractor and architect subject to the terms of The Sea Ranch Restrictions and the other applicable development constraints."

appear controlling in the light of the clear intent of the act." (15 Cal.3d at p. 587.)

The trial court did not err in denying the developer an exemption for the construction of single family residences on approved lots, in the absence of the existence of specific plans for which a building permit had been issued and in the absence of work accomplished in connection with such construction. (See *Patterson* v. *Central Coast etc. Conservation Com.*, *supra*, 58 Cal.App.3d 833, 843-845.)

E

Finally, we note that the trial court properly concluded, "The dedication by Oceanic of approximately 120 acres of land at the northern tip of The Sea Ranch for the purposes of creating a county regional park did not occur in a proceeding which is the equivalent of a building permit or necessary final approval required in order to obtain vested rights under the Coastal Act pursuant to Public Resources Code Section 27404." (See *Avco Community Developers, Inc.* v. *South Coast Regional Com.*, *supra*, 17 Cal.3d 785, 799-801.)

III

In conclusion we point out, as was done in *Avco*, our conclusion, that no vested right inures to proceed with development of those facets of The Sea Ranch project for which no final approval and commencement of work existed at the time of the adoption of the Coastal Act of 1972, does not strip the land of all value. "The result is merely that [the developer], like all other landowners in the coastal zone who have not acquired a vested right to develop their property, must apply to the commission for a permit and, if the application is denied, then the desired buildings on the tract cannot be constructed during the period the Act is in effect. . . . [T]he Act is only an interim measure designed to assure that valuable coastal zone resources are not irreversibly committed during the time the commission is developing a comprehensive plan for the orderly development of the coast, and the permit requirement will automatically be repealed 91 days after adjournment of the 1976 regular session of the Legislature." (*Avco Community Developers, Inc.* v. *South Coast Regional Com.*, *supra*, 17 Cal.3d at p. 802.)

Moreover, as noted in the *Urban Renewal Agency* case, if as the developer maintains, its planned community development is in total conformity with the Coastal Act's laudatory purpose, it will experience little difficulty in securing the requisite permits and proceeding in an expeditious manner with the completion of the project.

It now appears that on and after January 1, 1977, the development of The Sea Ranch will be subject in part to the provisions of the California Coastal Act of 1976. (Pub. Resources Code, § 30000 et seq., Stats. 1976, ch. 1330, as amended.) No opinion is expressed as to the developer's rights and obligations under that act.

The judgment is affirmed with costs incurred on plaintiff's appeal awarded to defendants and interveners.

Elkington, J., and Bray, J.,* concurred.

The petition of the plaintiff and appellant for a hearing by the Supreme Court was denied December 22, 1976.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.